# SUPREME COURT.

WILLIAM B. DINSMORE and others agt. ALVIN ADAMS and others.

*Control of the court over its own judgments — sufficient notice to move to vacate.*

The court has control over its own judgments and decrees, and will vacate a decree which has been improperly obtained, upon such notice as in view of the circumstances of each case may be deemed just and proper. This power is inherent in the court and is not limited by section 174 of the Code, which has reference merely to ordinary defaults.

Where, on a motion to vacate a judgment or decree, the affidavits are conflicting, the court must look to the record and the undisputed facts.

*New York, at Chambers, October,* 1874.

MOTION by defendants to vacate a judgment.

BARRETT, J. — The legal objections which have been raised upon the plaintiff's behalf are untenable. The court has control of its own judgments, and will vacate a decree which has been improperly obtained, upon such notice as, · in view of the circumstances of each case, may be deemed just and proper. This power is inherent, and is not limited by section 174 of the Code, which has reference merely to ordinary defaults.

The real question is, whether the moving parties have made out a case for the exercise of this power. The affidavits are · conflicting, and the court must look to the record and the undisputed facts.

It appears that many of the shareholders believed, upon information which they claim to have received from directors and agents of the company, that the transfer, through Plant,

to the Southern Express Company was merely an arrangement to prevent confiscation, and to secure the property for the benefit of such shareholders. For sometime previous to the commencement of this action these shareholders had been expecting a distribution of the stock of the Southern Express Company. Of these facts the plaintiffs were aware. This is evidenced by the charges contained in the Einstein complaint, and by the receipt of the protest of July 16, 1869. Indeed, the testimony upon this head is scarcely conflicting. Mr. Sanford, in his affidavit of September 26, 1873, admits that, at one time, "many of the shareholders supposed that the property sold to Plant might not be paid for, and that the Adams Express Company might have to take, in payment therefor, some interest in the Southern Express Company." He further quotes, from his counsel's brief, a statement to the effect that, while the trustees denied having stated that the Adams Express Company owned the Southern Express Company, yet it was not impossible that conversations were had with reference to the interest of the Adams in the Southern Express Company. Mr. Dinsmore, in his affidavit of October, 1870, refers to the interest which the plaintiffs had in the Southern Express Company "for securing therefrom the aforesaid amount of the aforesaid, purchase-money." As it does not appear that the shareholders were ever directly and specifically advised of the alleged payment of the Plant notes; that the dividends of which they had been in receipt were derived from that source, and that, consequently, there was no further claim upon the Southern Express Company; it is fair to conclude that the trustees were aware of the continued hopes and expectations of their *cestui que trust*.

The point to be decided, therefore, is not whether the shareholders had any just foundation for their belief and hope — not in fact whether the transfer, through Plant to the Southern Express Company, was sham or genuine, nor whether the plaintiffs, as special trustees, had anything to do with the matter, nor yet whether the transfer can be attacked and the

property or stock recovered in this action, but whether the plaintiffs, knowing the expectations of these shareholders, have prevented them by unfair means from at least making the attempt in this action to realize such expectations, or to hold the plaintiffs responsible for their non-realization.

It may be there was no general duty imposed upon the plaintiffs to disclose to their *cestui que trust* the nature and object of the Einstein suit; none, perhaps, to spread upon their complaint the fact that there was to be no distribution of the stock of the Southern Express Company. But when the trustees requested the shareholders to place themselves in the hands of the legal gentlemen who were their own counsel and the plaintiffs' attorneys of record in the suit, there at once arose a special obligation to make the fullest disclosure of every fact and circumstance which, if known, could possibly have influenced the judgment of these shareholders upon the important question presented to them, viz., the wisdom of intrusting their rights upon a final accounting which was to involve the ultimate release of their trustees, substantially to these trustees themselves.

With reference to this request, the plaintiffs should have distinctly stated in their circular that the attorneys, to whom they referred, were their own attorneys and counsel in the suit; they should not have left the discovery of that fact to the chance of the examination of the accompanying summons and complaint; they should also have given information as to the precise nature and object of the Einstein suit. Then, too, the fact with respect to the payment of the Plant notes, and that nothing further was to be hoped for in that quarter, or from the Southern Express Company, should have been circumstantially disclosed. This was not done. On the contrary, the complaint and circular were entirely silent with respect to Plant or the Southern Express Company, and the allusion to the Einstein suit was guarded and incidental.

The Einsteins were not referred to by name, but as "three of the defendants as plaintiffs," the gravamen of their charges

was omitted, and all that was said upon the subject was that they had "prayed for an accounting concerning the trust fund." Considering the real character of the Einstein suit, all this could only tend to mislead the shareholders, and to keep them from making inquiries which might have resulted not only in their refusal to accede to the plaintiffs' request, but in their joining the Einsteins, or otherwise seeking to prevent the plaintiffs' release.

In this connection, the previous silence of the plaintiffs, upon the request of an interview by certain shareholders, and again in the face of the formal protest of July 26, 1869, acquires special significance.

It characterizes the incidents which have been adverted to in the conduct of the suit, and indicates a settled and long existing purpose to keep the shareholders in the dark as to their rights in the Southern Express Company. The same seeming frankness, but real reticence runs through the entire case. For instance, instead of a reference to hear and determine, a reference to take proofs and report would have been fairer, and would have answered every purpose. Indeed, the latter would have been the proper reference, for there was no real issue left in the case. By the course adopted the referee was not bound to, and did not, append to his report either the plaintiffs' account or the testimony taken before him; and thus the shareholders were deprived of any other record evidence of the accounting than the general findings of the referee.

Without referring to other matters of record, it is quite evident that, so far as the defendants, who appeared by the plaintiffs' attorneys, are concerned, the judgment ought not to be permitted to stand.

It is claimed that the applicants have been guilty of laches; but they were not put upon notice of the facts on which they now move merely by being advised of the decree and the receipt of a dividend thereunder. There has been no such laches, since the discovery of the facts now presented, as to

Dinsmore agt. Adams.

justify a finding of acquiescence — and that is the test. The latter remark is, however, subject to qualification. Certain of the defendants, who now move had previously made a similar motion upon the same state of facts, which motion was withdrawn subsequently, and before making the present motion, these defendants accepted a further dividend under the decree herein. The fact of the payment of such dividend to all the shareholders is sworn to, and it is not denied or explained by these particular defendants. They accepted such dividend, therefore, with full knowledge of all the facts now presented, and for aught that appears (and the burden was with them), without protest or remark. They must, therefore, be held to have acquiesced in the decree.

With respect to these defendants, the motion must be denied. As to all the others, it must be granted.