GEORGE T. CHESTER, Individually, and as Executor of MARY P. CHESTER, Deceased, Appellant and Respondent, v. BUFFALO CAR MANUFACTURING COMPANY et al., Respondents and Appellants.

1. EXECUTORS — PRESUMPTION OF KNOWLEDGE AS TO ASSETS OF ESTATE — CONVERSION BY CORPORATION OF SURPLUS INTO CAPITAL BY ISSUANCE OF ADDITIONAL STOCK. Where, by his will, a decedent leaves his widow a life estate in all of the residue of his property, which included sixty shares of the stock of a certain corporation, the remainder on her death to be divided equally between his four children, one of whom was named as an executor of his estate, and it appears that during the lifetime of the widow, the corporation, in accordance with a stockholders' agreement, by capitalizing its accumulated earnings increased its stock so as to permit a stock dividend which gave to the estate 300 additional shares of stock on which the widow received large dividends up to the time of her death, and that thereafter upon the petition of the wife of

the executor to whom he had assigned his interest and at his stated desire, the shares were divided equally between her and the other remaindermen, said executor, who upon the death of the widow, became by her will the legatee of all of her property and who, either in his individual or executorial capacity, had been a stockholder in the corporation during all of the time until the settlement of the estate, cannot successfully contend, in an action brought by him against the other remaindermen to recover the shares delivered to them upon the ground that the increase of the capital stock was a mere dividend and that such stock was therefore the property of the widow as life tenant and passed to him under her will, that he was ignorant of the fact that the corporation claimed to have exercised the right to convert surplus into capital represented by the further issue of stock, since, as executor, he must have known that the additional stock was not received on subscription and cash paid therefor, but was necessarily an increase of stock which added accumulated profits to the capital, and must be presumed to have known that dividends were regularly paid on the additional shares.

2. FINAL ACCOUNTING — CONCLUSIVENESS OF DECREE — WHEN PARTY THERETO ESTOPPED FROM QUESTIONING PREVIOUS DISTRIBUTION OF ESTATE. It further appearing that plaintiff's assignor, prior to the settlement of the estate, instituted a proceeding in the Surrogate's Court to enjoin a proposed sale of the stock and praying that ninety shares thereof be apportioned to her, the petition setting forth that she and the three daughters of the decedent were the sole owners in equal portions of the 360 shares of stock, the plaintiff verifying and swearing to the truthfulness of the facts alleged, whereupon, in conformity therewith, the division heretofore mentioned was made, and that thereafter the remaindermen settled the remainder of their father's estate with the executor, there being an exchange of mutual releases, and that thereafter the executors of the estate in their petition for a final accounting stated that the only persons interested were the plaintiff, his wife and three sisters, to whom they had fully accounted for all property of the decedent and who had waived citation and consented to the final discharge of the executors, a final decree settling the estate must be deemed to have treated all of the facts alleged in the petition as true, and these necessarily including the division of the stock made under the proceeding instituted by the plaintiff's wife, that distribution has in contemplation of law been confirmed and, the decree being conclusive under section 2743 of the Code of Civil Procedure unless reversed, is a complete bar to the action.

3. JUDGMENT — POWER OF COURT TO AMEND. Upon a motion, under section 723 of the Code of Civil Procedure, for a re-settlement of the judgment of dismissal, on the ground that by reason of clerical and other errors and discrepancies it was erroneous and insufficient, the trial judge had no power to add thereto a provision for the distribution of the amount of liquidated dividends upon the shares of stock in suit which, having

accrued after the commencement of the action, upon notice of the plaintiff's claim, had been deposited by the corporation with a trust company to the credit of the action, since the omission of the provision was in no sense a clerical or other error which could be corrected at any time by the trial judge, the complaint asking no such relief, the trust company not being a party to the action and the distribution of the fund not being within the issues.

*Chester* v. *Buffalo Car Mfg. Co.*, 94 App. Div. 612, modified.

(Argued December 14, 1905; decided January 23, 1906.)

APPEAL by plaintiff from that part of a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 15, 1904, which affirms a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

Appeal by defendants from that part of said judgment which affirms an order of Special Term modifying the judgment of the trial court by adding a provision thereto directing the manner of distribution of a certain fund on deposit with the Fidelity Trust Company.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank C. Ferguson* for plaintiff, appellant and respondent. The plaintiff is not estopped from claiming his rights to the stock. (*Blood* v. *Kane*, 130 N. Y. 514; *Hauptmann* v. *F. Nat. Bank*, 83 Hun, 78 ; *Matter of Mullen*, 145 N. Y. 98.)

*Adelbert Moot* for defendants, respondents and appellants. The final decree of the Surrogate's Court "is conclusive as a judgment upon each party to the special proceeding who was duly cited or appeared, and upon every person deriving title from such party." (Code Civ. Pro. § 2743; *Stiles* v. *Burch*, 5 Paige, 135; *Rose* v. *Lewis*, 3 Lans. 324; *M. L. Ins. Co.* v. *Schwaner*, 36 Hun, 376 ; *Gill* v. *Brewer*, 37 N. Y. 552; *Matter of Denton*, 103 N. Y. 613; *Cline* v. *Sherman*, 144 N. Y. 606; *Altman* v. *Hoffeller*, 152 N. Y. 502; *McLouth* v. *Hunt*, 154 N. Y. 179; *Gibbons* v. *Mahon*, 136 U. S. 549; *Matter of Rogers*, 22

App. Div. 428.) The whole proceeding to divide the stock was a proceeding to divide it as the "sole" property of the estate of Thomas Chester, and it having been so divided at the instance of plaintiff, for the benefit of his wife as his assignee, and the estate having been finally settled upon the basis of such division as a fair and legal division, after abundant opportunity for the plaintiff to learn the truth and claim to the contrary, if the division was improper he is now estopped from claiming the contrary. (*Conrow* v. *Little*, 115 N. Y. 387.) The trial court should not have afterwards partly reversed its decision dismissing the complaint upon the merits, by ordering instead that the Fidelity Trust Company, not a party here, pay plaintiff one-fourth of $79,200 and accrued interest. (Code Civ. Pro. § 452; *Osterhoudt* v. *Bd. Suprs.*, 98 N. Y. 239.)

BARTLETT, J. This action has been twice tried by the court without a jury. On the first trial judgment for plaintiff was reversed on appeal, the Appellate Division handing down a prevailing and dissenting opinion (70 App. Div. 443). The second trial resulted in a judgment for defendants dismissing the complaint on the merits, which was affirmed by the Appellate Division on authority of the decision of the first appeal.

The plaintiff, George T. Chester, individually claims under the will of his father, Thomas Chester, to be the owner of three hundred and fifteen shares of the capital stock of the Buffalo Car Manufacturing Company, ninety shares of which are in his possession, and the balance of two hundred and twenty-five shares he seeks to recover from his three sisters, seventy-five shares each, who are the individual defendants. Cora C. Tripp, one of the defendants, died since the commencement of this action and her interest is now represented by her husband, George A. Tripp, as executor of her will.

The findings of fact are long and complicated, as questions are involved other than those directly presented by this appeal. The defendant corporation will be referred to hereafter as the car company for sake of brevity. The car com-

pany is a domestic corporation doing business in the city of Buffalo ; its capital stock prior to 1893, when the same was increased, consisted of forty thousand dollars divided into four hundred shares of one hundred dollars each. Thomas Chester died in the city of Buffalo on February 18, 1884, leaving him surviving Mary P. Chester, his widow, and four children, viz., the plaintiff, George T. Chester, and the defendants, Elizabeth Chard, Kate C. Miller and Cora C. Tripp. At the time of his death Thomas Chester was the owner of sixty shares of the capital stock of the car company and held the certificate thereof in his own name ; he left a will in which, after bequeathing certain money legacies to each of his four children, he gave the remainder of his property to his wife, Mary P. Chester, " for her use and benefit during the full term of her natural life, but no longer," and after her death the same to be divided equally between his four children. The testator appointed his son, the plaintiff, George T. Chester, and his son-in-law, James F. Chard, the executors of his will. The executors qualified and duly discharged the duties of their office extending over a period of some fourteen years and more. The widow, Mary P. Chester, survived her husband about thirteen years, dying February 16th, 1897, leaving a will in which she gave all her property to her son, the plaintiff, and appointed him executor.

The sixty shares of capital stock of the car company held by Thomas Chester, the father, at the time of his death in 1884, had paid only one dividend of fifteen hundred dollars since 1879. In that time there had accumulated a surplus of $289,341.88, and the sixty shares of stock were appraised by the executors of Thomas Chester at $850.00 a share, making a total value of $51,000. The executors took out a new certificate of the stock in the name of the estate of Thomas Chester on December 9th, 1884, on surrender of the old certificate formerly held by testator. On December 31st, 1892, the surplus of the car company was $523,030.57 ; on January 11th, 1893, there was declared a cash dividend of $80,000.00, leaving surplus net profits of $443,030.57. The difference

between this last sum and $289,341.88, the amount of surplus at the time of the death of Thomas Chester, is $153,688.69 ; the latter amount represents surplus earnings and accumulations from the death of Thomas Chester until the declaration of the stock dividend on the 14th of January, 1893. The amount necessary to increase the capital stock from $40,000 to $250,000 was $210,000 ; this left remaining an undivided surplus profit of $233,030.57, after issuing the new stock. Thereafter the car company accumulated further surplus profits during the lifetime of the widow over and above the distribution of profits made by dividends, and on January 19th, 1897, as shown by its statement made on that day (a month before the widow's death), the surplus profits amounted to $316,426.62. After deducting all dividends made upon the capital stock between the date of the death of the testator and the date of the death of the widow, including the stock dividend, the car company increased its net surplus by the sum of $72,664.41.

It appears that the widow received as dividends after the date of her husband's death and before her own nearly $95,000.00. The estate of Thomas Chester received three hundred shares of the new stock issue, making a total holding of three hundred and sixty shares which were held by the executors until the widow's death in February, 1897.

On September 6th, 1897, a few months after the death of the widow, James F. Chard, one of the executors of the will of Thomas Chester, addressed a letter to the plaintiff, George T. Chester, his co-executor, which in substance called attention to the fact that the estate of Thomas Chester was the owner of three hundred and sixty shares of the capital stock of the car company, and that he would, on October 4th, 1897, at a time and place indicated, offer the same at public sale. Thereupon, and on September 14th, 1897, Helen Reid Chester, the wife of the plaintiff, filed her petition in the Surrogate's Court of Erie county, entitled in the matter of the estate of Thomas Chester, in which was incorporated the above letter, and stated, among other things, that the widow was dead,

the debts were paid, that she was the assignee of George T. Chester's interest in the estate of Thomas Chester, and that she and the three daughters of Thomas Chester were the sole owners, *in equal portions,* of all the property of said estate; that one item of said property was three hundred and sixty shares of the capital stock of the car company; that she was the owner of ninety shares of said three hundred and sixty shares of said stock, and that she did not desire to have her ninety shares sold but wished to keep the same as an investment; that until she saw the said letter of James F. Chard, addressed to the plaintiff, she was not aware that either of the executors had any intention of selling the stock. Her prayer for relief was, in substance, that the executors be cited to show cause why they should not deliver over to her the ninety shares of stock of the car company; also that in the meantime they be enjoined from selling or disposing of the stock. The petitioner verified her petition in due form and her husband, the plaintiff, in a separate verification, swore that the petition was true and stated that he desired its prayer should be granted. On this petition the surrogate issued a citation returnable on the 27th of September, 1897, and enjoining the sale of her ninety shares of stock.

On the 30th of September, 1897, it is found that James F. Chard, as one of the executors of the estate of Thomas Chester, deceased, surrendered to the car company for cancellation the certificates for sixty and three hundred shares, respectively, of the capital stock held by the executors, and procured to be issued by the car company, in the place thereof, four new certificates of ninety shares each, one to Helen Reid Chester and one to each of the individual defendants herein, the daughters of Thomas Chester. As Helen Reid Chester, the wife of the plaintiff, had succeeded in procuring the relief demanded in her petition, no order was entered and the proceeding was dropped.

On February 4th, 1898, the car company declared a forty per cent dividend which amounted to $3,600.00 on ninety shares of the capital stock. This amount was paid to Helen

Reid Chester and a like sum to each of the three daughters of Thomas Chester.

On November 18th, 1898, the executors of the estate of Thomas Chester filed their petition in the Surrogate's Court of Erie county, setting forth the usual formal facts and praying for their final discharge. They also alleged that they had fully accounted to the interested persons for all property of the deceased coming to their possession or knowledge, and that the release and waiver of citation and accounting showed full satisfaction, etc.; they asked for a decree releasing, exonerating and discharging them as such executors of and from any and all liability and accountability to said interested persons, etc. Thereupon there was entered on the 15th of December, 1898, in the Surrogate's Court a decree discharging them in accordance with the prayer of the petition and without an accounting. About ten days prior to the commencement of this action, January 31st, 1899, Helen Reid Chester assigned and transferred to the plaintiff all her right, title and interest in the property and stock of the car company.

It is in the light of all these facts that 'we approach the consideration of plaintiff's position. The plaintiff claims that the alleged increase of the capital stock of the car company in 1893 was a mere dividend, and that the three hundred shares of stock representing it were the property of the widow as life tenant and passed to him under her will as the sole legatee; that during all the legal proceedings and transactions, covering a period of several years, he was ignorant of the fact that the car company claimed to have exercised the right to convert surplus accumulated profits into capital represented by a further issue of stock; that the car company had no power to increase the capital stock in the manner it did.

The defendants, while insisting that the increase of the capital stock of the car company in 1893 was made in the exercise of its undoubted power in the premises, claim the plaintiff is conclusively barred and disqualified from challeng-

ing the corporate action for reasons which will be stated. We are of opinion that this position is well taken and our examination of the case will be confined to this single point.

On the first trial of this action there was a finding of fact (17) that the plaintiff had no knowledge of the declaration of the stock dividend, nor of the increase of stock, nor of the issue of the certificate of three hundred shares. This finding was changed at the second trial and reads as follows : " That said George T. Chester was himself a stockholder in the Buffalo Car Manufacturing Company from 1879 until 1888, when he sold his stock to James F. Chard ; that said Chester was never an officer or director of said corporation." This lack of knowledge on the part of the plaintiff as to the increase of capital stock is commented upon as a material fact in the dissenting opinion of the Appellate Division on the first appeal. As no such finding was made on the second trial the question of plaintiff's knowledge of the increase of the capital stock in 1893 is to be determined by the facts as now found.

A brief recapitulation of the facts as to which reference has already been made in detail will be profitable. The plaintiff was an individual stockholder of the car company from 1879 until 1888 ; the estate of Thomas Chester was a stockholder from February, 1884, to the death of the life tenant, testator's widow, in February, 1897, and during these thirteen years the plaintiff was one of the executors of the estate. The fact is that either in his individual or executorial capacity the plaintiff was a stockholder during all the time covered by this controversy.

The record discloses that the car company was, in view of the capital invested, remarkably successful and earned for its stockholders enormous dividends ; we have already quoted these figures in detail. The sixty shares of the testator, held by him at the time of his death, of the par value of six thousand dollars, were appraised at $850.00 a share or $51,000.00. On the 7th of January, 1893, the stockholders executed an agreement to increase the capital stock from $40,000 to

28

$250,000, which was signed by the estate of Thomas Chester by James F. Chard, executor, and a week later the capital stock was duly increased as agreed. Thereupon the estate of Thomas Chester received an additional three hundred shares of stock, making a total holding of three hundred and sixty shares. On this number of shares the widow enjoyed large dividends until her death. The plaintiff as executor must have known that this additional stock was not received on subscription and cash paid for the same, but was necessarily and obviously an increase of stock, adding to the capital surplus accumulated profits to that extent; he must be presumed to have known as executor that dividends were regularly paid on the additional three hundred shares held by the estate of Thomas Chester. During the fourteen years the life estate continued the widow received as dividends, for ten years of the time on stock, the par value of which was six thousand dollars, and the remaining four years on stock, the par value of which was thirty-six thousand dollars, the enormous sum of about ninety-five thousand dollars. Is it credible, in view of these facts, that the plaintiff remained ignorant of the increase of capital?

This brings us to the judicial proceedings that took place after the death of the life tenant, which are claimed by the learned counsel for the defendants to be a complete bar and answer to this action. In the proceeding in the Surrogate's Court instituted by the plaintiff's wife, as already pointed out, the plaintiff, on the 14th of September, 1897, stated under oath that among the assets in the estate of Thomas Chester were three hundred and sixty shares of the capital stock of the car company, the sole owners of which *in equal portions* were his wife and the three daughters of Thomas Chester, defendants herein. The wife, as petitioner, asked that ninety shares of that stock be apportioned as the amount coming to her, and thereupon in conformity with the prayer of the petition this division of the stock was made between the four persons so indicated. Can the plaintiff be now heard to say that, when he commenced this action, fifteen

months later, he was unaware of the fact that there had been
an increase of the capital stock of the car company?

This leaves to be considered the effect of the final discharge
of the executors of the estate of Thomas Chester by the Sur-
rogate's Court of Erie county as hereinbefore stated. In this
connection it may be observed that according to the findings
various litigations were pending in regard to the settlement of
the estate of Thomas Chester. There was a firm in the mill-
ing business in Buffalo, known as Thornton & Chester, which
had large transactions, and there were several important liti-
gations and matters open and unadjusted prior to the time
when the executors sought to obtain their final discharge.
About a year after the division of the stock under the pro-
ceeding instituted by the plaintiff's wife, it appears that plain-
tiff's sisters settled the remainder of their father's estate with
him and there was an exchange of mutual releases which it is
fair to assume would not have been done had the plaintiff dis-
closed at that time his alleged claim to a portion of the stock
already distributed.

Section 2743 of the Code of Civil Procedure deals with
the effect of a decree in accounting proceedings and reads in
part as follows: "With respect to the matters enumerated in
this section, the decree is conclusive as a judgment upon each
party to the special proceeding who was duly cited or
appeared, and upon every person deriving title from such
party." In view of the fact that the executors of the estate
of Thomas Chester in their petition to the surrogate stated
that the only persons interested were the plaintiff, his wife
and his three sisters, and that the executors had fully
accounted to them for all property of said deceased coming to
their possession or knowledge, and that they had waived cita-
tion and consented to the final discharge of the executors, the
decree discharging the executors must be deemed to have
treated all the facts alleged in the petition as true. These
general allegations of the petition necessarily included the
division of the stock of the car company made under the pro-
ceeding instituted by the plaintiff's wife in September, 1897,

and if this be so, then the final decree has, in contemplation of law, confirmed that distribution, and the decree being conclusive, under the statute quoted, is a complete bar to this action. So long as the final decree remains unreversed the plaintiff is bound by that division of the stock. Under ordinary circumstances a party dissatisfied with a decree has the remedy of appeal, but in this case the plaintiff cannot be heard to complain of the decree entered, for the reason that the distribution of the stock was made in pursuance of his own request, under oath, he having joined in the petition of his wife.

The plaintiff not only encounters the bar of the statute, but the facts established show that this litigation is wholly unjustified. His sisters, by his own action, have been vested each with ninety shares of this stock since September, 1897, and in February, 1898, each received a forty per cent dividend of thirty-six hundred dollars on their respective holdings. The plaintiff now occupies the position of claiming that each of his sisters was entitled only to one-quarter of the original sixty shares, that is, fifteen shares each; that the remaining seventy-five shares in the hands of each sister should be decreed his property, together with the dividends that they have received thereon. The judgment for defendants dismissing the complaint on the merits should be affirmed.

We will now consider the defendants' appeal from so much of the order and judgment of the Appellate Division as affirmed so much of the order of the trial judge as added a further provision to the final judgment some months after its entry. It appears from the findings (25 and 26) that in the month of February, 1899, the car company sold and transferred its plant, merchandise on hand and all its property, excepting its bills and accounts receivable and cash, to the American Car & Foundry Company; that prior to the making of any liquidation dividends and before the commencement of this action, plaintiff notified the car company of the claim that he makes herein, and thereupon, after receiving such notice, the car company deposited the liquidation divi-

dends upon the three hundred and sixty shares of stock with
the Fidelity Trust Company of the city of Buffalo, to the
credit of this action, and that there is now on deposit in said
bank as such liquidation dividends upon the said three hundred
and sixty shares of stock the sum of $79,200.00.

The final judgment of the Trial Term was entered on July
20th, 1903, and "adjudged and decreed that the plaintiff take
nothing because of his complaint herein, or the proofs and
arguments submitted thereunder, but that this action and said
complaint be dismissed upon the merits," etc. Sometime
thereafter the plaintiff served a notice of motion for a re-set-
tlement of the said decree, in which it was stated that "the
grounds upon which the said justice will be asked to re-settle
the said decision are that the same is erroneous and insuf-
ficient by reason of clerical and other errors and discrepancies."

On October 22nd, 1903, the trial judge made an order in
which, after directing two minor amendments to which the
defendants consented, he further ordered, notwithstanding the
objection and opposition of the defendants, that the decision
be further corrected and re-settled by adding thereto a pro-
vision reading as follows: "That the $79,200, and accrued
interest thereon, now on deposit with the Fidelity Trust Com-
pany to the credit of this action, should be divided among
the parties to this action as follows: Ninety-three hundred
and sixtieths (90-360) thereof should be paid by the said
Fidelity Trust Company to the plaintiff, fifteen-three hundred
and sixtieths (15-360) thereof should be paid by it to the
defendant, Kate C. Miller, fifteen-three hundred and sixtieths
(15-360) thereof should be paid to the defendant, Elizabeth
Chard, fifteen-three hundred and sixtieths (15-360) thereof
should be paid to the said George A. Tripp, as executor of
the will of Cora C. Tripp deceased, and two hundred and
twenty-five-three hundred and sixtieths (225-360) thereof,
being the liquidation dividends upon the two hundred and
twenty-five shares of said stock involved in this action, should
be paid to the individual defendants herein in the following
proportions, namely: 75-360 thereof should be paid by it to

the defendant, Elizabeth Chard, 75-360 thereof should be paid
by it to the defendant, Kate C. Miller, and 75-360 thereof
should be paid to the defendant, George A. Tripp, as execu-
tor of the will of Cora C. Tripp, deceased. It is hereby
further ordered that the judgment entered upon the said
decision be and the same hereby is modified to conform to the
decision as hereby corrected and re-settled."

The Appellate Division, while affirming the judgment for
defendants as originally entered dismissing the complaint on
the merits, inserted in its order the following: "It is further
ordered and adjudged that the order modifying the decision
and judgment be and the same hereby is affirmed."

This motion to amend the judgment is made under section
723 of the Code of Civil Procedure, which reads, in part, as
follows: "The court may, upon the trial, or at any other
stage of the action, before or after judgment, in furtherance
of justice, and on such terms as it deems just, amend any
process, pleading, or other proceeding, by adding or striking
out the name of a person as a party, or by correcting a mis-
take in the name of a party, or a mistake in any other respect,
or by inserting an allegation material to the case; or, where the
amendment does not change substantially the claim or defense,
by conforming the pleading or other proceedings to the facts
proved."

The plaintiff asked to re-settle the decision on the ground
that the same is erroneous and insufficient by reason of cleri-
cal and other errors and discrepancies. It is clear that the
principal amendment in reference to the $79,200.00 on deposit
with the Fidelity Trust Company and the distribution of the
same, is not within the contemplation of this section. The
omission of the provision afterwards inserted in the judgment
of the trial court was in no sense a clerical or other error
which could be corrected at any time by the trial judge. The
prayer of the plaintiff's complaint asks no such relief, but
prays that it be adjudged that he is the owner of two hun-
dred and twenty-five shares of the stock of the car company,
in addition to the ninety shares which he then held, and that

his three sisters be directed to deliver up to him the two hundred and twenty-five shares; that the title to the same be duly placed in him, and that his sisters be adjudged to pay to him the amount of dividends which they had received thereon; that an accounting be had between the car company and the plaintiff; and that it further be adjudged to pay to the plaintiff from its net assets the proportionate amount thereof belonging to the plaintiff as the owner of three hundred and fifteen shares of its capital stock as upon a dissolution of the said corporation. The Fidelity Trust Company is not a party to this action and the distribution of the fund of $79,200.00 is not within the issues.

The power of the trial court to amend its judgment after entry, under section 723 of the Code, has been considered in a number of cases. In *Bohlen* v. *Metr. E. R. Co.* (121 N. Y. 546, 550) the court said: "The intention in the enactment * * * was that the courts should * * * disregard immaterial errors, defects and mistakes in the pleadings and proceedings * * * and the only limitation imposed as to the making of corrections is that they shall not affect the substantial rights of the adverse party."

In *Heath* v. *N. Y. B. L. B. Co.* (84 Hun, 302; 146 N. Y. 260, 263) an equity suit was brought by a stockholder of defendant to cancel a bond and mortgage. The complaint was dismissed as the result of the trial and judgment for defendant was given upon a counterclaim set up in the answer for $8,014.66. Upon motion the findings were re-settled and the judgment modified to $5,217.99, upon the ground that the former amount was a mistake. This court said: "We agree with the learned General Term that the amendment corrected no clerical error, no mistake of computation, but changed the substantial rights of the parties. It would be a most dangerous precedent if such a wide departure from due and orderly procedure as is here disclosed should be permitted. The contention of plaintiff's counsel that section 723 of the Code of Civil Procedure allowed such an amendment to be made is a mistake. This section was designed to confer upon

courts the amplest power to correct mistakes in process, pleadings and all other respects so long as the substantial rights of parties are not affected."

So much of the order of the Appellate Division which affirmed the order of the trial judge, adding to the final judgment the clause as to the $79,200.00 and accrued interest on deposit in the Fidelity Trust Company, and the distribution adjudged to be made of the same, should be reversed; also, the order of the trial judge, adding said clause to the final judgment, should be reversed as to said clause and the same stricken from the final judgment, with costs. The original judgment for defendants dismissing the complaint on the merits should be affirmed, with costs.

CULLEN, Ch. J., GRAY, O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur.

Ordered accordingly.