ANDREW S. SIEGEL, Claimant, *v.* THE STATE OF NEW YORK, Defendant. (Claim No. 14167.)

Court of Claims, December 8, 1930.

R. S. & Smith Johnson for the claimant.

Hamilton Ward, Attorney-General [John L. Campbell, Deputy Assistant Attorney-General], for the State.

ACKERSON, J. This is an application made to this court by the claimant at a regular term thereof held in the city of Utica on the 15th day of September, 1930, upon due notice to the defendant, for an order vacating and setting aside a judgment of dismissal herein, dated December 14, 1916, and directing that this claim be opened and the claimant herein be permitted to come in and prove his claim and that R. S. & Smith Johnson be substituted as attorneys for the claimant.

It appears from the moving papers that the claim herein was filed with this court on April 24, 1916; that it demanded damages in the sum of $4,750 from the State by reason of the injury to claimant's premises, consisting of about 150 acres of land situated in the towns of Rome and Verona in Oneida county, State of New York; that the injury to claimant's farm and crops was caused by the operations of the defendant in constructing the Barge canal and in the construction and deepening of a new channel constituting a portion of what is known as Wood creek, which operations were all adjacent to claimant's said premises. And that said claim was made under and pursuant to chapter 640 of the Laws of 1915.

That said claim was duly brought on for trial before this court on the 14th day of December, 1916, and the trial was had; that at the conclusion of the trial the court upon the motion of the Attorney-General of the State of New York made the following order, to wit: " It is hereby ordered, adjudged and decreed, that the said claim be and the same is hereby dismissed on the following grounds:

" First. That no notice to file a claim against the State was filed, according to the provisions of section 264 of the Code of Civil Procedure. (Now Court of Claims Act, §§ 12, 15, 23.)

" Second. That no cause of action is stated in the claim or was proved on the trial, under the provisions of Chapter 640 of the Laws of 1915, under which law the said claim purports to have been filed.

" Third. That the claim was not filed within the time provided for by section 264 of the Code of Civil Procedure."

Upon the above order the judgment was made and entered in

the clerk's office of this court which the claimant now seeks to vacate and set aside.

It appears from the stenographer's minutes of the trial that at the conclusion thereof Deputy Attorney-General Ehle made the motion to dismiss as follows: " Mr. Ehle: Now if the Court please, the State wishes to renew its motion made at the opening of the case and moves for a dismissal of the claim on the ground that no Notice of Intention was ever filed."

As this was the only ground for dismissal discussed by the court, and apparently the ground which the court acted upon, the other grounds upon which the Deputy Attorney-General based his motions are omitted.

" The Court: Mr. O'Connor, I am inclined to think this motion ought to be granted. I do not think it is an appropriation at all and I think a notice of intention is necessary. I do not think that you have * * * this provision of law may be outside of the two years Statute of Limitations. But I do think that this is a case which requires the filing of a notice of intention. Mr. O'Connor: Well, if Your Honor please, now this claim is under this statute for or on account of any appropriation. The Court: I do not think that this is an appropriation."

Without any further discussion on the part of the court the motion to dismiss was granted. And there is no dispute about the fact that it was granted upon the ground that the injury to claimant's premises not being an appropriation a notice of intention was necessary in order to give the court jurisdiction.

This claim is in all respects similar to a number of other claims filed by different claimants at about the same time this claim was filed for damages suffered to adjoining and nearby lands. Among these are the claims of George B. White and wife, No. 14166; William D. Conley and wife, No. 14165; Louise V. Weismantle, No. 13788; Porter B. Tuttle, No. 13790; Alfred J. Keller, No. 13830, and the Tulin-Pendorf claims. The lands mentioned in these claims as having been injured by the State in its Barge canal construction are all adjacent to Wood creek in the said county of Oneida.

The manner in which these lands were injured is described in the opinion in the Appellate Division in the claims of Louise V. Weismantle, as reported in 210 Appellate Division, 608. The land of this claimant as well as the lands of the other claimants herein mentioned were all affected in the same way as the Weismantle land and by the same acts of the State. It appears from the description above referred to of this injury that its manner and causes were substantially as follows:

The State in constructing the Barge canal through this section followed what is known as the Wood creek valley. The work proceeded westerly until it reached Fish creek which it absorbed and proceeded on to Oneida lake on the Fish creek course but it did not touch any of the lands in question. The canal is from twelve to fourteen feet deeper than Fish creek which it absorbed or Wood creek at the point where that stream formerly emptied into Fish creek about a mile east of Oneida lake. It appears that by reason of the State lowering the bed of Wood creek several feet at the point where it formerly emptied into Fish creek, which is now part of the Barge canal, it has been changed from a sluggish stream to a rapidly-flowing stream with the result that the bed of the creek has been washed out so that instead of its natural level being about five feet below the surrounding ground as it passes over the farms of these several claimants it soon became after this work of the State over fourteen feet below the ground and that the stream instead of being thirty feet wide as it always had been is now from one hundred to one hundred and fifty feet wide; that by the process of erosion the adjacent farm lands to the extent of many acres thereof have either been washed away or damaged by reason of this change in the nature of Wood creek brought about by the aforesaid operations of the State.

The Court of Claims in disposing of these claims found the facts to be practically as above stated but dismissed the claims upon the theory that the damages were incidental and consequential, and resulted from the State's improvement of the navigability of Wood creek, and that there was no lawful invasion or appropriation of claimants' rights. And also that these not being claims for the appropriation of land it was necessary for the claimant to file a notice of intention as provided by section 264 of the Code of Civil Procedure.

The decision of the Court of Claims in dismissing the Weismantle claim was appealed to the Appellate Division but there was so much delay in bringing on the argument before that court that a decision was not reached till November, 1924.

That decision, as appears by the opinion of Justice CLARK of the Fourth Department (210 App. Div. 608), and which was concurred in by all of his associates, entirely reversed and overruled the theory of the law applying to these claims as held by the Court of Claims in dismissing them. We quote from the opinion: " The State urges that it did not appropriate any of claimant's property or rights. But it is clearly established that even though no part of claimant's farm was actually touched by the Barge canal construction, the lowering of Fish creek, into which Wood creek emptied,

caused the waters to flow much more rapidly than ever before with the result that claimant's lands were washed away, and she sustained serious damages. It was an appropriation of claimant's property even though no notice or map were served on her showing that portions of her property would be taken; but the filing of a map and serving of such notice was not the only method by which the State could appropriate property for use of the improved canal. (*American Woolen Co.* v. *State of New York*, 195 App. Div. 698; *Fulton Light, Heat & Power Co.* v. *State*, 200 N. Y. 400.)

"The State in its Barge canal construction at this point made no attempt to make Wood creek a navigable stream. The waters of that creek by this work were caused to flow more rapidly than before, and were used to operate a new channel, that is, the new Barge canal through the canalized Fish creek. Under these circumstances the State cannot claim immunity for the damages to plaintiff's property that have been established by the evidence. (*Fulton Light, Heat & Power Co.* v. *State*, 200 N. Y. 400; *Commissioners of Canal Fund* v. *Kempshall*, 26 Wend. 404.) * * *

"The State urges that there was no proof of its negligence. Under the evidence it could be found that there was negligence on the part of the State in failing to erect a weir or other suitable structure to control the flow of the waters of Wood creek. What it did was to so lower the bed of Fish creek, into which Wood creek had always emptied, that the waters of Wood creek flowed so much more rapidly than before that claimant sustained damages by the washing away of her farm, and the State negligently omitted to erect any suitable appliances by which the flow of the waters of Wood creek could be effectively controlled.

"The acts of the State not being in an effort to improve the navigability of Wood creek, but to improve the navigation in an entirely different and artificial channel, it should not be permitted to escape responsibility for the resultant injury to the property of a riparian owner.

"The judgment should be reversed on the law and the facts, and a new trial granted, with costs to claimant, appellant, to abide the event."

A new trial was had in accordance with that holding and thereafter awards were made to all the other claimants having similar claims, I believe, except Andrew S. Siegel, the claimant herein. As late as January 6, 1930, this court vacated the judgments of dismissal entered in the claims of *Conley* v. *State* (No. 14165) and *White* v. *State* (No. 14166) in 1918 above mentioned, and permitted those claimants to come in and present their proofs in accordance

with the holding by the Appellate Division in the *Weismantle Case* (*supra*), and awards were made to those claimants for the damages they had suffered. The Attorney-General at that time made no opposition to such action on the part of the court.

It now appears from the decision of the Appellate Division in the *Weismantle* case that the washing away of claimant's land was an appropriation thereof by the State and that, therefore, this court was in error when it held that it was not an appropriation and that a notice of intention was necessary and dismissed the claim.

The Hon. Albert J. O'Connor of Rome, N. Y., was the attorney of record in this case. Soon after the claim was dismissed he took an appeal to the Appellate Division, about which time he became sick and soon thereafter died. As a result of Mr. O'Connor's sickness and death the appeal was never prosecuted and an order was entered dismissing the same by the Appellate Division, Third Department, on March 25, 1918, since which time no action has been taken in regard to the matter until this application was made.

It is very clear to the court that the ends of justice demand that the judgment of dismissal herein entered upon a decision wrongfully made through a misapprehension of the law should be vacated and set aside and this claimant Siegel be permitted to come in and have an opportunity to make out a case for damages against the State under the law as laid down by the Appellate Division in the *Weismantle* case if he can do so.

This opportunity has already been accorded to all of his neighbors who had similar claims, two of whom above referred to having made such applications last January which were unopposed by the Attorney-General.

At this time, however, the Attorney-General is opposing the granting of this motion and takes the position that the claimant is asking for an order that the court has no power to grant.

He quotes on his brief the case of *Herpe* v. *Herpe* (225 N. Y. 323).

That was a case where after the trial had been concluded and the judgment entered, the trial court made an order amending the judgment and awarding costs to the plaintiff. The Court of Appeals said that could not be done.

We quote from the opinion of Judge COLLIN (at p. 327): " The rule has long been settled and inflexibly applied that the trial court has no revisory or appellate jurisdiction to correct by amendment error in substance affecting the judgment. * * * Clerical errors or a mistake in the entry of the judgment or the omission of a right or relief to which a party is entitled as a matter of course may alone be corrected by the trial court through an amendment. (*Bohlen* v. *Met. El. Ry. Co.*, 121 N. Y. 546; *Heath* v. *New York*

*Building Loan Banking Co.*, 146 N. Y. 260; *Corn Exchange Bank of Chicago* v. *Blye*, 119 N. Y. 414; *Card* v. *Meincke*, 70 Hun, 382.) "

But this is not an application to amend; this is an application to vacate a judgment. Judge COLLIN in his opinion further says in speaking of the powers of the trial court after judgment: " It cannot correct judicial errors either of commission or omission. *Those errors are, under our system of procedure, to be corrected either by the vacating of the judgment or by an appeal. (Bohlen v. Met. El. Ry. Co., 121 N. Y. 546; Gagnon v. U. S., 193 U. S. 451; Matter of Ungrich, 201 N. Y. 415, 418; Heath v. New York Building Loan Banking Co., 146 N. Y. 260; Stannard v. Hubbell, 123 N. Y. 520; Heinitz v. Darmstadt, 140 App. Div. 252.)* "

(The italics are mine.) The power of the court to vacate a judgment for the purpose of correcting judicial errors is there recognized.

I agree with counsel that it seems to be well settled that after a trial court has rendered its decision it is without power to change it either in a matter of fact or law except as to what may be properly considered as a clerical error. For example, a decision that should fail to provide through inadvertence or oversight on the part of the court, that the verdict or award should bear interest as provided by statute as in a death claim or in a claim for damages arising from a breach of contract might properly be amended by the court to conform to the statute. In the case of *Hydraulic Power Co.* v. *Pettebone Cataract Paper Co.* (194 App. Div. 819) the Appellate Division of the Fourth Department held as follows: "After a decision has been rendered no substantial change can be made by the trial judge or referee in his report or decision, neither in the findings of fact, nor in the conclusions of law, and direction for judgment. (*Chester* v. *Buffalo Car Mfg. Co.*, 183 N. Y. 425, 439; *Herpe* v. *Herpe*, 225 id. 327.) "

But again I repeat this is not an application to amend or change a judgment in any way, but it is an application calling upon the court to exercise the inherent discretionary power which it possesses to vacate its own judgments when it is confronted with a situation in which the ends of justice can be met in no other way.

The Attorney-General, however, calls our attention to the fact that section 528 of the Civil Practice Act limits the court in the exercise of this discretionary power to a period of two years after the filing of the judgment roll.

The portion of the section he relies upon reads as follows:

" § 528. Time for motion to set aside a judgment. A motion to set aside a final judgment, for error in fact not arising upon the trial, shall not be heard, except as herein specified, after the expiration of two years since the filing of the judgment roll. * * * "

But is this a motion to set aside a final judgment for error in fact not arising upon the trial? Apparently not. This is a motion to set aside a final judgment for error in law arising upon the trial. This motion does not, therefore, come within the purview of section 528.

It has been repeatedly held that independent of statute the power of the courts to control or open their own judgments is inherent in the very nature of their constitution. (*Matter of Wiltsie & Fromer*, 5 Misc. 105.)

In the case of *Ladd* v. *Stevenson* (112 N. Y. 325, 331), Judge EARL, writing for the Court of Appeals, used this language: "The court had the power, in the exercise of its discretion, to set aside the judgment entered in favor of the plaintiff after the first trial, and to permit the three defendants, Stevenson and the Goelets, to appear and answer. * * * And, notwithstanding section 724 of the Code, the court had the power to set aside the judgment and allow them to come in and defend. (*Dinsmore* v. *Adams*, 5 Hun, 149; *Alling* v. *Fahy*, 70 N. Y. 571; *Hatch* v. *Central Nat. Bank*, 78 id. 487; *Vanderbilt* v. *Schreyer*, 81 id. 646; *O' Neil* v. *Hoover*, 17 Week. Dig. 354.) * * * The whole power of the court to relieve from judgments taken through 'mistake, inadvertence, surprise or excusable neglect,' is not limited by section 724; but in the exercise of its control over its judgments it may open them upon the application of any one for sufficient reason, in the furtherance of justice. *Its power to do so does not depend upon any statute, but is inherent, and it would be quite unfortunate if it did not possess it to the fullest extent.*" (The italics are mine.)

In the case of *Alling* v. *Fahy* (70 N. Y. 571) a judgment of foreclosure with the subsequent proceedings were set aside and the Court of Appeals held that whether it was for irregularity, or upon the "broad equities," or as a favor that it was entirely discretionary with the court below and that while such discretion could be reviewed by the General Term the Court of Appeals had no power to review it.

In the case of *Hatch* v. *Central National Bank* (78 N. Y. 487), Judge DANFORTH wrote as follows for the Court of Appeals: "The plaintiffs recovered judgment, and it was satisfied. They sought by motion to vacate the judgment and amend the complaint by adding new causes of action. Leave was granted upon terms. * * * It was going a great way to grant the relief sought; but the application was not without merit, and was one which under a long series of authorities the court had power to grant. If so the order is not appealable."

The court then refers to several cases to support his holding and

then has this to say about the power of the court in this regard: " These (and there are many others) cases show the power of the court over its own judgments, and its habit to exercise it in aid of justice. It is an inherent power and not limited in matters of substance by the sections of the Code."

In the case of *Dinsmore* v. *Adams* (48 How. Pr. 274) the court said: " The legal objections which have been raised upon the plaintiff's behalf are untenable. The court has control of its own judgments, and will vacate a decree which has been improperly obtained upon such notice as, in view of the circumstances of each case may be deemed just and proper. This power is inherent, and is not limited by section 174 of the code, which has reference merely to ordinary defaults."

This decision was appealed to the General Term, First Department where it was affirmed (5 Hun, 149), and it was there urged that as more than one year had elapsed the court had no power to open the judgment. The General Term, Justice Donohue writing the opinion, which was concurred in by Noah Davis and Charles Daniels, had this to say on that proposition: " There are powers above and beyond the Code that this court possesses, and it seems to me that in a proper case the Court of Equity possesses an undoubted right to give the relief asked."

This matter was further appealed to the Court of Appeals where the appeal was dismissed as reported at 66 New York, 618.

In the case of *Archer* v. *Archer* (171 App. Div. 549) the Appellate Division upheld an order of the Special Term vacating judgments of foreclosure one of which had been affirmed on appeal. It held that the order vacating the judgments was within the inherent power of the court and it further said: " If the court that tried the case was apprised, subsequent to the rendition of judgment, of facts which impressed it that judgment was contrary to law, involved a breach of trust, was unjust to the rights of the defeated party, and was rendered under a misapprehension of the ' true facts,' then it cannot be said that the Special Term did not exercise its discretion (to quote the expression in *Ladd* v. *Stevenson*, 112 N. Y. 325) ' for sufficient reason, in the furtherance of justice.' (See, too, *Kelly* v. *Bell*, 17 N. J. Law, 270; Black Judg. [2d ed.] § 322; *Wetmore* v. *Law*, 34 Barb. 515, cited in *Matter of New York, Lackawanna & W. R. Co.*, 40 Hun, 138.) "

In the case of *Donnelly* v. *McArdle* (14 App. Div. 217) the plaintiff sued the defendant for the dissolution of a partnership and for an accounting. The judgment of the trial court was for the defendant and was entered upon a decision dismissing the complaint in February, 1892. In December, 1895, an order was granted by the

trial judge vacating the judgment. The trial judge in granting the order vacating the judgment said among other things: " There can be no doubt that the plaintiff has not had such a trial as he was entitled to. This has resulted from misapprehension of the real status of the case. * * * There is no question of the inherent power of the court to relieve under such circumstances. It simply grants a new trial *ex debito justitiæ*. Owing to a clear misapprehension (in which all parties including the court shared) the plaintiff has never had a trial in the proper sense of that term. The court cannot, therefore, hesitate to afford him relief."

Upon appeal to the Appellate Division, First Department, the court affirmed the order vacating the judgment and said among other things in its opinion: " We all agree that the court had power to grant the motion, and that such power was not dependent upon or limited by the Code but is inherent in the court. (*Vanderbilt* v. *Schreyer*, 81 N. Y. 646; *Ladd* v. *Stevenson*, 112 id. 325.) "

As late as April of this year the Appellate Division, First Department, in its determination of an appeal from an order vacating a final judgment in the case of *Flanson Realty Corporation* v. *Workers' Unity House* (229 App. Div. 179), clearly set forth the power of the court to vacate its judgments whenever the ends of justice demand it. Justice O'MALLEY in his opinion in that case clearly explains and defines this inherent power of the court. He says: " The general power of the Supreme Court to vacate, set aside, or modify its final orders or judgments for sufficient reason and in the interests of substantial justice is well recognized, is not dependent upon any express statutory provision giving it that power, but is a power inherent in the court itself. The statement defining and recognizing this power most frequently adopted by the courts is found in the case of *Matter of City of Buffalo* (78 N. Y. 370). The court says: ' Courts have always control over their own proceedings, and where there is not express prohibition, may deal with them so that what is right and just may be reached.' Many instances of the exercise of this power are found in the reported cases. It is true that in many of these cases there appeared either fraud, excusable mistake, irregularity or inadvertence. But the court is never limited in its action in setting aside or modifying its orders, decrees, or judgments to any one or all of these occasions for its exercise; but if it appears that substantial justice will be subserved, and injustice to persons, even though they be not in form parties to the proceeding, whose rights would otherwise be injuriously affected by the judgment, prevented, the court will set aside, correct or modify its judgment. (*Matter of Automatic Chain Co.*, 134 App. Div. 863, 866; affd., 198 N. Y. 618.) "

There can be no doubt in view of the authorities above cited that the Supreme Court has ample power to grant such a motion as the one before us. But has the Court of Claims similar powers? It is a court of record the same as the Supreme Court. (Judiciary Law, § 2.)

The Legislature, by the Court of Claims Act, as amended, has conferred on the Court of Claims practically unlimited jurisdiction to hear and determine all classes of claims against the State whether sounding in contract or tort. And it has also, by said act, provided that the practice before the court shall be the same as in the Supreme Court except as otherwise provided by the rules which the Court of Claims establishes itself or by the Civil Practice Act.

Section 14 of the Court of Claims Act provides in part, and so far as is material here, as follows: " § 14. Court rules and procedure. The court may establish rules for its government, and the regulation of practice therein; prescribe the forms and methods of procedure before it, vacate or modify judgments, and grant new trials, and except as otherwise provided in said rules and regulations, or the civil practice act, the practice shall be the same as in the supreme court."

In addition the Court of Appeals has held that practically the same practice should prevail in the Court of Claims as in the Supreme Court. (*Spencer* v. *State of New York*, 187 N. Y. 484; *Ostrander* v. *State of New York*, 192 id. 415; *Smith* v. *State of New York*, 214 id. 140.)

I think we are at liberty to conclude, therefore, especially in view of the specific power conferred upon the Court of Claims by the Legislature to " vacate or modify judgments," that it has the same inherent discretionary powers in this regard over its own judgments as has the Supreme Court.

That being the case, and in view of the fact that the judgment herein dismissing the claim of this claimant was granted by the court under a misapprehension of the law which mistake cannot now be corrected on appeal, we are of the opinion that a proper case has been made for granting this motion and the making of an order directing that the judgment of dismissal herein be vacated and set aside.

It is true that this claimant might be accused of laches and of being negligent in failing to act with diligence to protect his rights while there was still time to do so in the regular way by appeal. But it must be remembered that at the time his appeal was pending his attorney was taken sick and died which accounts undoubtedly in large part for the failure to prosecute the appeal. At that time also the *Weismantle* appeal had not been decided by the Appellate

Division and, therefore, the liability of the State for the injury suffered had not been definitely established.

We are now confronted by the indisputable fact that the original decision herein was wrong and contrary to law, and that this wrong must endure, and remain without a remedy unless the court has power to vacate this judgment. We do not believe in view of the authorities above cited that the court is compelled to remain impotent in the presence of such an injustice which its own mistaken decision has made possible

We do, therefore, direct that an order may be entered vacating and setting aside the judgment of dismissal herein and directing the clerk of this court to place this claim on the calendar of our next regular term at Utica and that R. S. & Smith Johnson be substituted as attorneys for the claimant herein.

BARRETT, P. J., and RYAN, J., concur.