In the Matter of the Judicial Settlement of the Account of Pro-
    ceedings of EMMA J. M. EARP, as Executrix, etc., of JOHN L.
    MILLER, Deceased.
EMMA J. M. EARP, Individually and as Executrix, etc., Appellant,
    Respondent; CHARLES E. MILLER, Respondent, Appellant.

First Department, March 21, 1924.

Executors and administrators — accounting — objection that certain
    shares of stock delivered by executrix to herself and to her brother
    belonged to estate — evidence shows that stock belonged to persons to
    whom delivered and not to estate — decree directing redelivery reversed.

The objections to the account of an executrix based on the ground that she
    delivered certain shares of stock to herself and certain shares to her brother
    which belonged to the testator, her father, cannot be sustained, and the decree
    directing the redelivery of said shares to her as executrix must be reversed,
    since the evidence shows that the shares of stock so delivered were not the
    property of the testator but were the property of the testatrix and her brother.
Since there was no objection raised to the delivery of certain shares to another
    brother and no contest of his ownership of these shares, the decree must be
    reversed as to him for that reason.

APPEAL by Emma J. M. Earp, individually and as executrix,
from that part of a decree of the Surrogate's Court of the county
of New York, entered in the office of said Surrogate's Court on
the 29th day of June, 1923, confirming the report of the referee
judicially settling the account of said executrix and directing her
to account for certain shares of stock.

Appeal by Charles E. Miller from so much of said decree as
requires him to indorse and surrender to the executrix certain
certificates of stock.

*Wilbur F. Earp,* for the appellant, respondent.

*Laughlin, Gerard, Bowers & Halpin* [*John J. Halpin* of counsel],
for the respondent, appellant.

McAVOY, J.:

Emma J. M. Earp, individually and as executrix, appeals from
a decree of the Surrogate's Court, New York county, confirming a
report of a referee and which decree judicially settled her account
as executrix and directed her to account for certain shares of
stock. Her brother, Charles E. Miller, appeals from the decree
also in so far as it requires him to indorse and surrender to the
executrix certain certificates of stock held by him.

The appellants are the executrix and executor of their father's
will, John L. Miller, deceased. The objections to the account

31

which the referee and the surrogate have sustained are comprised in the 2d paragraph of the filed items of objections and generally the ground of objection to the account is that the executrix has delivered to herself thirty shares of a company known as the Empire Square Realty Company, and delivered to her brother, John L. Miller, Jr., thirty shares of the stock of the same company, which it is claimed were the property of the deceased, and that she has improperly delivered to herself twelve shares of stock of the Rellim Construction Company and to her brother, John L. Miller, Jr., twelve shares of stock in the same company, it being claimed that this also was part of the assets of her father's estate and not the individual possession of these children, and that she delivered five shares to herself of the stock of a concern known as the Riverdale Realty Company, and to her brother, John L. Miller, Jr., five shares of the same company, it being alleged that this also was the property of the decedent and not the property of the brother and sister of the objectant. The surrogate's decree directs that these stocks should be returned to the estate and accounted for by the executor. Besides these shares of stock there were others made out to the order of other children of John L. Miller, deceased, to wit, to Charles E. Miller, Warren A. Miller and George H. Miller, which shares were found amongst the effects of the decedent after his death, and although there were no objections filed to the delivery of these shares to the other children, nevertheless the decree directs the return of the certificates made out in the name of Charles E. Miller, that is, forty-four shares of the Empire Square Realty Company; seventeen shares in the Rellim Construction Company and nine shares in the Riverdale Realty Company.

Charles E. Miller appeals from so much of the decree as makes this direction, and doubtless this part of the decree must be reversed since there was neither objection to nor contest of his ownership of these shares.

The result of this litigation is not to advantage the estate itself but is to require the five beneficiaries, who are in possession of the stock in question, to return their respective shares to the general estate fund to be redistributed according to the will of the testator in equal parts.

The three companies of which mention is made, the Empire, Rellim and Riverdale companies, were owned by the testator and his five children. The properties which were held by the three corporations were acquired through the moneys, efforts and services of the testator and his children, and all the shares of capital stock of the three companies were issued to him and them.

The shares mentioned in the objection are the shares of these several companies which were made out to the testator's daughter, Mrs. Earp, and his son John, Jr., at the same time that all the other certificates were made out to the testator and the other children. The entire capital stock of the three companies was issued in the following proportions: Empire Square Realty Company: 126 shares, John L. Miller, testator; 44 shares, Charles E. Miller; 30 shares, Emma J. M. Earp; 10 shares, Warren A. Miller; 30 shares, John L. Miller, Jr.; 10 shares, George H. Miller. A total of 250 shares, the entire capital stock. Rellim Construction Company: 51 shares ($50 each), John L. Miller, testator; 17 shares ($50 each), Charles E. Miller; 12 shares ($50 each), Emma J. M. Earp; 10 shares ($50 each), John L. Miller, Jr.; 5 shares ($50 each), Warren A. Miller; 5 shares ($50 each), George H. Miller. A total of 100 half shares, the entire capital stock. Riverdale Realty Company: 25 shares, John L. Miller, testator; 9 shares, Charles E. Miller; 5 shares, Emma J. M. Earp; 5 shares, John L. Miller, Jr.; 3 shares, Warren A. Miller; 3 shares, George H. Miller. A total of 50 shares, the entire capital stock.

The retained stubs conform to these certificates in every respect. The capital stock thus outlined and its holding was in the same status at the time of the death of the testator and for some years theretofore. He held, as the foregoing indicates, one hundred and twenty-six shares of the Empire, fifty-one shares of the Rellim and twenty-five shares of the Riverdale. It is these certificates for which the executrix accounted and it is the claim of the objectant that the testator owned the particular shares standing in the names of the executrix, Mrs. Earp, and the son, John, Jr., in the three companies. The certificates representing these shares were unindorsed and it was not shown at the trial before the referee that the testator ever owned them or claimed to own them, or had any legal or equitable lien upon them. One of the testator's children, who was the only other contestant, Warren, transferred all his interests to his brother, John, Jr., and there remained in the proceeding only Charles E. Miller, one of the sons, as contestant. In his testimony occurs the following passage: " Q. Do you claim now, in this proceeding, that your father owned more than 126 shares of the Empire Square Realty Company? A. I claim he owned very much less. Q. And you also claim that he owned less than 51 shares of the Rellim? A. The exact amount I don't know, but it is much less than control; very much. Q. You have the same contention in respect to the Riverdale Realty Company? A. All the companies."

If this testimony be true the contestant can have no case,

First Department, March, 1924.                [Vol. 208

because if the shares in each of these companies, which belonged to the testator, are fewer than the shares actually accounted for by the executrix, surely no complaint can be made with respect to her detention of any of the other shares.

This testimony is that given by the objectant in whose behalf the proceeding was commenced and continued, and in whose interest the decree entered adjudges that the executrix account for the shares which he testified that he does not claim his father owned. Moreover, when the transfer tax proceeding was pending, this same contestant appeared with an attorney before the transfer tax appraiser and urged that the father's interest was not as much as appeared in the schedules. The same interest was reported to the transfer tax appraiser as is now accounted for by the executrix. Nevertheless, contestant now urges that the father owned more of the shares at his death. It would seem, upon the contestant's own showing, that there could not be a decree in his favor, adjudging the ownership of these shares in the testator. But even if a ruling can be made in favor of a contestant against his own proof, the executrix's showing makes plain that as to the Rellim Construction Company and the Riverdale Realty Company, the testator himself sometime before his death made out a statement in which he set forth his interest as amounting to fifty-one per cent in these companies and referred to himself on that occasion as " 51 per cent Miller."

The stock certificates of these two companies which are the basis of the claim of the executrix and her brother John, Jr., are the only certificates of these two companies ever issued. There is no evidence in the case that the testator ever claimed to own more than fifty-one per cent of the other company, the Empire Square Realty Company, although on the organization of the company, 240 shares of the stock of that company were issued to him and 5 shares to Charles E. Miller and 5 shares to John L. Miller, Jr. The certificate for 240 shares that was issued to the testator was indorsed in blank, was placed in an envelope with the stubs and was never signed by the president or vice-president, but merely by the treasurer and secretary and hence never had any legal inception as an issue of shares.

The issue of the Empire stock upon which the claim of the executrix and her brother John is based, was dated July 22, 1913, was signed by the president and the secretary, and also comprises 250 shares, and is, apparently, a reissue of the whole stock for the purpose of making a conformation in the actual interests to the shares themselves, it never having been intended from the nature of the conduct of the business that the testator should retain

more than a controlling interest, to wit, fifty-one per cent. All three of the parcels of real property held by the three companies were acquired with moneys derived in the coal business, and although this coal business was conducted in the name of Charles E. Miller, it was a joint family affair in which all the members of the family co-operated in which the father, the brothers and the sister signed checks and which obviously bore all the indications of common ownership. When this Empire Square Realty Company was incorporated, the attorney who attended the incorporation, wrote to the testator concerning the subject of the incorporation under date of January 6, 1904. On the back of that attorney's letter is a pencil memorandum in the handwriting of the testator which sets forth the respective shares of the parties, which the testator apparently at that time intended to distribute according to the notes of that memorandum. He allotted 127 shares to himself and 30 shares to the executrix, the same allotment which the present certificate gives her. To John, Jr., there was an allotment of 26 shares. In April, 1904, however, the three certificates, one for 240 shares and two for 5 shares each to the brother and sister, were made out. How this came about is not indicated. There were many discussions thereafter among the six members as to the proper allotment of the stock and the testator wrote to his wife in October, 1907, saying: " There are some matters, such as giving each one his stock that ought to be attended to." In March, 1909, Warren A. Miller authorized the transfer of his shares to his brother Charles in trust for him. When the parties were conferring on occasions regarding the number of shares to be issued to each of the six, the penciled memorandum, heretofore referred to, was made by John L. Miller, Jr., and submitted to the others and the father's conceded handwriting thereon indicates the extent of his own claim of interest by the notation at the bottom: " 51% Miller."

Under date of July 22, 1913, the stock of the Empire Realty Company was finally issued in the proportions in which it now stands. Up to that time there were no dividends. In the fall of 1913 the testator made up a table of what he called a drawing account based on the stock holdings of each share owner to be put into effect when the companies earned sufficient to make payments. This list is in the testator's handwriting and shows the stockholdings as they were at the time of his death. In June, 1914, the company was in a position to undertake the payment of dividends and since that time the dividends have been paid in proportion to the stockholdings, and out of surplus arising in the conduct of the rental of the buildings on the land which these companies own. Although

the checks covering the shares of the six members of these corporate bodies were not in exact proportions to their respective number of shares, yet this is explained by the fact that the children occupied apartments in one of their father's buildings of an unequal value, and some rendered services, but apparently the services were not equally regarded in value as appears from the compensation.

After the death of the testator on the 31st day of January, 1917, and in August, 1918, the children divided the drawing account which their father had theretofore been accustomed to receive into five equal shares, so that each drew thereafter $250 monthly in addition to his own income. It appeared without dispute, too, that in the case of the Empire Square Realty Company, under an arrangement to turn in the first issue, the testator indorsed his certificate for 240 shares, put it in with the stubs, and caused to be issued shares in the proportions which were existent at the time of his death. In the case of the Rellim Construction Company the only certificate ever issued to the testator was the certificate for 51 shares, and in the case of the Riverdale Realty Company the only certificate ever issued to the testator was .25 shares. No other certificate exists, and no certificate is in evidence making proof that the testator owned or claimed to own any other shares in these companies. The shares issued to the several parties in the three companies are in the same proportion in each company, as could be mathematically accomplished without cutting the shares in fractional divisions.

We are convinced that the evidence in behalf of the executrix conclusively establishes that the testator was never the owner of these shares of stock which are directed to be turned back to the estate and that the decree should be reversed in so far as it directs the executrix to account for the respective shares of the three realty companies involved, and in so far as it directs the return to the estate by indorsement of the aforesaid shares of these realty companies, and in so far as it enjoins the payment of dividends on account of these shares to the various owners and holders thereof.

The decree should be reversed and the matter remitted to the Surrogate's Court, with direction to proceed in accordance with opinion.

DOWLING, MERRELL, FINCH and MARTIN, JJ., concur.

Decree reversed and proceeding remitted to the Surrogate's Court for further action in accordance with opinion. Settle order on notice.