In the Matter of the Claim of FRANK RAYMOND, Respondent, against the ESTATE OF ANDREW DAVIS, Deceased.

WILLIAM J. DOTY, as Administrator, Appellant.

Partnership — joint venture — liquidation — jurisdiction — profits of partnership or joint venture unknowable without liquidation of assets — deceased partner not chargeable with estimated value of shares taken as part of purchase price of land — real property in name of living partner a partnership asset — liquidation may be ordered by Surrogate as incident to allowance or rejection of claim of living against estate of deceased partner.

1. The profits of a joint venture between a living and a deceased partner remain unknown and unknowable without a winding up of the business through a liquidation of the assets.

2. The deceased partner is not chargeable with the estimated value of shares of stock in a corporation received as part of the purchase price of land where there is nothing in the record to suggest that he took them as the equivalent of cash. The shares were but a sub-

stitute for the land and were to be held like any other asset as a partnership investment, subject to an equitable lien for the repayment of advances made by either partner as a contribution to the capital.

3. Real property held in the name of the living partner is also a partnership asset, and the fact that the payment therefor, made by the deceased partner, has been allowed to his estate as a credit to be deducted from the value of the shares of stock, simply frees the parcel from a lien for capital expenditures and leaves it to be divided between the partners according to their interests.

4. Liquidation of the partnership may be ordered by a decree of the Surrogate as an incident to the allowance or rejection of a claim by the survivor to share as creditor in the assets of the estate of the deceased partner.

*Matter of Raymond* v. *Davis*, 220 App. Div. 480, reversed.

(Argued March 27, 1928; decided May 1, 1928.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 4, 1927, which modified and affirmed as modified a decree of the Chautauqua County Surrogate's Court allowing in part the claim of the respondent herein against the estate of Andrew Davis, deceased.

*John Griffin* for appellant. The plaintiff cannot maintain an action for any amount of the moneys received, until there is an accounting and an agreement by Davis to pay the amount found due upon the accounting. (*Hollister* v. *Simonson*, 36 App. Div. 63; *Consolidated Machinery Co.* v. *Harper Machinery Co.*, 190 App. Div. 283; *Belanger* . v. *Dana*, 52 Hun, 39.) The Surrogate's Court did not have jurisdiction to try the claim. (*Matter of Walker*, 70 App. Div. 263; *Hurlburt* v. *Durant*, 88 N. Y. 121; *Clark* v. *Highland*, 88 App. Div. 392; *Matter of Young Men's Ch. Assn.*, 22 App. Div. 325; *Matter of Smith*, 129 N. Y. Supp. 911; *Matter of Hanna*, 121 Misc. Rep. 754; 208 App. Div. 813.)

*Nelson J. Palmer* for respondent. The surrogate had jurisdiction to hear and determine this claim. (Code

Civ. Pro. §§ 2510, 2681; Surrogate's Court Act, § 211; *Matter of Coombs,* 185 App. Div. 312; *Matter of Aldrich,* 194 App. Div. 815; *Matter of Herman,* 178 App. Div. 182; 222 N. Y. 564; *Matter of Malcomson,* 188 App. Div. 600.)

CARDOZO, Ch. J.   Frank Raymond and Andrew Davis formed a partnership or joint venture in 1916 to deal in lands in Chautauqua county.   The thought was that there were deposits of marl and lime which would permit a profit to be made if the lands were worked or sold.   Raymond was to supply the knowledge and Davis the cash, the profits to be divided a third to one and two-thirds to the other.   The project went forward on that footing. There were surveys and options and contracts and conveyances.   One parcel, known as the Bremer property, paid for like the rest with money supplied by Davis, was left in Raymond's name.   Other parcels were conveyed to a corporation, the Bone Dry Lime Corporation, of which Davis was president, in return for cash and shares of stock.   This was in March, 1918.   The cash went to Davis, but it did not exceed $5,000, after allowance made for expenses incurred in consideration of the payment, if indeed it was as much.   The shares, which went to Davis also, had a par value of $15,000, but their actual value was uncertain, and from whatever value they might yield, there would be need to deduct his payments for the land before the profit could be measured.

Davis died a few months later, in December, 1918, with the joint venture still subsisting.   There is no evidence that an accounting had been asked for or refused.   There is none of a disclaimer of a partnership relation.   Raymond waited a year and a half, and then put in a proof of claim for upwards of $11,000.   He framed his proof upon the theory that a third of the gross assets, and not merely a third of the profits, was to be his share of the common venture.   There were three trials before a surrogate or a county judge with varying results.   On the

third trial a decree was made for the allowance of the claim to the extent of $5,000. The Appellate Division upon an appeal by the executrix cut the claim still lower. By the findings of that court, Raymond's share was a third interest in the profits of the venture, and not in the gross assets. Davis, according to the findings, had received $5,000 in cash and shares of stock of the value of $15,000, $20,000 in all. He had expended, however, for principal and interest, $15,231.95 in taking title to the lands. This left a net profit of $4,768.05, of which a third is $1,589.35. The recovery due to Raymond was fixed at that amount with interest. In addition he was held to have the right to retain the Bremer property free from any claim on the part of the estate.

The profits of the joint venture remain unknown and unknowable without a winding up of the business through a liquidation of the assets (*Crater* v. *Bininger*, 45 N. Y. 545, 548; *Bank of B. N. A.* v. *Delafield*, 126 N. Y. 410, 415; *Wilcox* v. *Pratt*, 125 N. Y. 688; *Belanger* v. *Dana*, 52 Hun, 39, 43). Liquidation there has never been. Davis was not chargeable with the estimated value of the shares when issued as if in taking them he had received what was equivalent to cash. There is nothing in the record to suggest an understanding that he took them on that basis. The shares were not cash, but a substitute for the land, and were to be held like any other asset as a partnership investment, subject to an equitable lien for the repayment of advances made by either partner as a contribution to the capital (Partnership Law [Cons. Laws, ch. 39], §§ 40, 71; Pollock on Partnership, p. 118). Not till the advances had been repaid either through a sale of shares or otherwise could profits be determined (*Chapin* v. *Learnard*, 246 N. Y. 158; Id. 629, 630). Not till then were the shares or the proceeds to be ratably apportioned. The shares are worthless to-day, for the corporation has become insolvent. We find no basis for a holding that the executrix is to be charged with their estimated value

in the heyday of gladsome expectation when the venture was still young. If the loss is to be attributed to her inaction or misconduct, the fact has not been proved.

Liquidation would be incomplete, however, though the shares were accounted for as money. The Bremer property too is an asset of the partnership, though held in Raymond's name. Instead of treating it as such an asset, he has incumbered it with a mortgage and claims it as his own. The decision of the Appellate Division upholds him in this assertion of title and dominion. We hold a different view. True, indeed, it is that the payment made by Davis in the purchase of the Bremer parcel has been allowed to his estate as a credit to be deducted from the value of the shares of stock. The only effect of that deduction is to free the parcel from a lien for capital expenditures, and leave it to be divided between the partners according to their interests. A balance cannot be struck until this asset has been liquidated.

There remains a question of jurisdiction and procedure. Liquidation may be ordered by a decree of the surrogate as an incident to the allowance or rejection of a claim to share as creditor in the assets of the estate. Only by such relief can there be complete justice between the parties without oppressive expense or harrowing delay. A Surrogate's Court has jurisdiction " to administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires " (Surrogate's Court Act, § 40). Early decisions were made upon the basis of a different grant of power. They deny the competence

of a surrogate to decree the winding up of the business of a partnership, though liquidation be a necessary preliminary to the determination of a controversy lawfully before him (*Thomson* v. *Thomson,* 1 Bradf. 24, 35; *Matter of Irvin,* 87 App. Div. 466, 470). We must hold them superseded by the provisions of the statute. An amendment in 1921 emphasizes the call for a liberal construction. Till then, the general grant of jurisdiction had at times been read as limited by specific grants of jurisdiction as to enumerated subjects (*Matter of Mondshain,* 186 App. Div. 528; *Matter of Holzworth,* 166 App. Div. 150; 215 N. Y. 700). The amendment gives notice that the powers that are specific shall hereafter be read as being " in addition to and without limitation or restriction on " the powers that are general (*Matter of Van Buren* v. *Est. of Decker,* 204 App. Div. 138; *Matter of Haigh,* 125 Misc. Rep. 365, 367, 368; cf. *Matter of Kenny,* 92 Misc. Rep. 330). " Concentration of jurisdiction as to decedents' estates " (per FOLEY, S., in *Matter of Haigh, supra*) is the purpose clearly revealed in the statutory scheme. " The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy " (per THOMAS, J., in *Matter of Coombs,* 185 App. Div. 312, 314). To remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked.

The order of the Appellate Division should be reversed, with costs to abide the event, and the matter remitted to the Surrogate's Court for further proceedings in accordance with this opinion.

POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; ANDREWS, J., not sitting.

Ordered accordingly.