## In the Matter of the Estate of EMMA S. WINSLOW, Deceased.

Surrogate's Court, Nassau County, April 26, 1934.

*Tibbits, Lewis & Rand,* for the petitioners.

*Kaufman, Weitzner & Celler,* for the respondent.

HOWELL, S. The petition alleges in substance that by the will of the decedent her residuary estate was left to trustees for the benefit of her daughter, Marguerite Winslow Little, during her life and upon the death of said daughter to be divided equally between her heirs at law and next of kin; that the executors of the decedent upon their accounting and in accordance with the decree settling the same, paid over the sum of approximately $145,000 to the respondent as trustee; that Marguerite Winslow Little, the life beneficiary of the trust, died on March 21, 1926; that her heirs at law and next of kin are her sons, consisting of the petitioner and one Winslow Little; that the respondent trustee has paid the said Winslow Little $50,000 or upwards, but that he has paid the petitioner nothing and refuses to do so or to account; and the petitioner seeks to compel the trustee to account.

Upon such a state of facts the surrogate would have unquestioned jurisdiction to compel the respondent to account as testamentary trustee upon the application of the petitioner, a person concededly interested.

However, in addition to the facts above set forth, the petitioner further alleges in substance in his petition that on or about May 4, 1929, he was induced by the respondent trustee to execute and deliver to him a sealed agreement or release, releasing and discharging the respondent with respect to the petitioner's distributive share in the decedent's estate and of and from any and all claims arising out of the respondent's trusteeship; he further alleges in substance that such release was improperly procured from him without consideration and under circumstances which would impel a court of equity to set it aside. The relief he seeks is the vacating and setting aside of the release and a decree requiring the respondent trustee to file his accounts and have them judicially settled.

The respondent trustee by his answer questions the jurisdiction of the court, asserting that the surrogate is without power or jurisdiction in such a proceeding to vacate and set aside the release. He contends in substance that because of the release the petitioner is not in a position to compel the respondent to account as trustee and may not, therefore, institute a proceeding for compulsory accounting until he has first succeeded in having the release set aside by action in equity in the Supreme Court.

Counsel have diligently briefed this question and brought to the attention of the court the many decisions affecting the subject. In considering the authorities it must be borne in mind that decisions upon the question prior to the 1914 revision of the statute are no longer of binding effect, but are of value only as showing the historical trend which has resulted in the broadening of the jurisdiction of the surrogate. The same is true to a lesser extent of the decisions following the 1914 revision but antedating the 1921 amendment. In 1914 the jurisdiction of the surrogate was for the first time broadly extended by the enactment of section 2510 of the Code of Civil Procedure, as follows: " Each surrogate must hold, within his county, a court, which has, in addition to the powers conferred upon it, or upon the surrogate, by special provision of law, jurisdiction, as follows:

" To administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to

any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires."

This, however, was followed immediately by the words, "and in the cases and in the manner prescribed by statute," following which the powers of the surrogate were expressly prescribed in eight subdivisions.

Although the statute thus broadly empowered the surrogate to try and determine all questions, legal or equitable, and to make full, equitable and complete disposition of the matter before him, nevertheless the courts were at first inclined to hold that such broad power was restricted by the subsequent specific provisions. (See *Matter of Holzworth*, 166 App. Div. 150 [2d Dept.]; affd., 215 N. Y. 700; *Matter of Herman*, 178 App. Div. 182 [2d Dept.]; affd., 222 N. Y. 564; *Matter of Mondshain*, 186 App. Div. 528 [1st Dept.].)

In the *Holzworth* and *Herman Cases* (*supra*) the Second Department expressly held that the broad grant of power and jurisdiction to the surrogate, contained in the second paragraph of the Code of Civil Procedure, section 2510, was restricted and limited to the matters contained in the eight subdivisions following such paragraph. Such also was the decision of the First Department in *Matter of Mondshain* (*supra*), a case in many respects quite similar to the instant case. In the *Mondshain Case* (*supra*) there was involved a discovery proceeding in which it was alleged that moneys had been transferred by the decedent to the respondent and that the respondent refused to disclose the same; but further alleged also that the petitioner had executed and delivered to the respondent a general release, under seal, but that such release had been induced by fraud. Referring to the question of jurisdiction under the Code of Civil Procedure, section 2510, the court held that while the section begins with a broad general grant of equity powers it is immediately followed by the words, "and in the cases and in the manner prescribed by statute," followed immediately by the eight subdivisions prescribing the cases. The court, therefore, followed the decision in the *Holzworth Case* (*supra*) to the effect that the general phrases in the statute yielded to the particular specifications and that consequently the surrogate could exercise equity jurisdiction only in the particular cases specified which did not include the setting aside of a release on the ground of fraud.

Shortly following the foregoing decisions, however, the same courts, namely, the First and Second Departments, as well as some of the surrogates, applied a more liberal rule of construction.

Thus, in *Matter of Coombs* (185 App. Div. 312), the Appellate Division in the Second Department, without reference to the

*Holzworth* or *Herman Cases* (*supra*), sustained the jurisdiction of the surrogate under the Code of Civil Procedure, sections 2510 and 2681, upon a judicial settlement of an estate, to hear and determine a rejected claim to the effect that at his death the testator had, or should have had, property which he was bound to dispose of or transmit by will to the claimant, and said (p. 314): " The language is so comprehensive that in association with section 2681 it sweeps away all constraints upon the surrogate's jurisdiction, and the necessity of multiplying remedies in the distribution and transfer of a decedent's property to whomsoever it belongs or should be delivered. The policy of securing unity of administration of a decedent's estate should result in expedition and thrift, and demands varied and highly informed judicial capacities. The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy."

In *Matter of Malcomson* (188 App. Div. 600) a situation was presented very similar to that in the instant case. In a proceeding for judicial settlement of an executor's account it appeared that one of the devisees and legatees had executed an instrument under seal assigning all his right, title and interest under the will to others. He alleged that the execution of the instrument was without consideration and petitioned the surrogate to require the executors to account and asked that the purported assignment be set aside and vacated as being without consideration, against equity and good conscience and void. The executors denied the power of the surrogate to make such an order contending that the petitioner's only remedy was by action in equity. Referring to the Code of Civil Procedure, section 2510, the Appellate Division in the First Department held that the relief sought by the petitioner was clearly within the general grant of power and jurisdiction to him by the Legislature, and distinguished the *Mondshain Case* (*supra*) by holding that in the *Malcomson* case the order sought was one of those enumerated in the eight subdivisions of section 2510, whereas in the *Mondshain* case the order sought was not included therein. In other words, the determination of the court was that the surrogate was empowered to vacate and set aside an assignment and release under seal in an accounting proceeding but was not empowered to set aside a release under seal in a discovery proceeding.

In *Matter of Ungrich* (115 Misc. 762) the referee, referring to the construction placed upon the Code of Civil Procedure, section 2510, by the courts in the *Holzworth, Herman* and *Mondshain Cases* (*supra*), pointed out that more recently the courts had given effect to the broad language of that act in the *Coombs* and *Malcomson*

*Cases* (*supra*), and held that, under the decisions last referred to, as well as the decision in *Matter of Fox* (166 App. Div. 718), the surrogate under the broad powers granted him in 1914 by the enactment of the Code of Civil Procedure, section 2510, having unquestionable jurisdiction to settle an executor's account, was empowered in such a proceeding to determine the question of the status of objecting parties who had executed releases, and to decide whether thereby such parties were not in a position to object, or whether they were in such a position because of their contention that the release was not executed under the conditions of good faith required of agreements between a fiduciary and beneficiaries.

In *Matter of Brady* (111 Misc. 492), Surrogate SCHULZ in Bronx county, held that the intent of the framers of section 2510 of the Code of Civil Procedure was that the surrogate should have sufficient equitable jurisdiction in matters pending before him of which he had statutory jurisdiction, to enable him fully to determine a controversy without waiting for an action to be brought and determined in equity in the Supreme Court. He distinguished the *Mondshain* case as involving a discovery proceeding only, and the powers of the surrogate in such a proceeding, and the *Holzworth* case as applying to the power to set aside a general release on the ground of fraud which was not a case specified in any of the eight subdivisions of section 2510. The question in the *Brady* case was presented by motion to strike out objections upon the ground that they might not be interposed or considered in face of an alleged ratification by the objectors in written instruments of the items to which objection was made. The learned surrogate followed the *Fox* and *Malcomson* cases and asserted his power to inquire into the circumstances attending the execution and delivery of such written instruments and to determine whether under the circumstances disclosed they constituted a ratification. In *Matter of Fox* (166 App. Div. 718) petitioner applied to compel a trustee to account and the latter asserted that all parties interested had agreed to a disposition of the estate, waived the filing of an account and released the trustee from liability. The petitioner claimed that such waiver and release had been obtained by fraud and false representations. The court held that the issues thus raised were triable in the Surrogate's Court and that it was the duty of such court in the first instance to try and determine the question of the petitioner's interest in the estate and if the trial of such preliminary issue resulted in favor of the trustee the petitioner would not be entitled to maintain the proceeding.

It is apparent from the decisions above referred to that some

of them are difficult to reconcile and that attempts to distinguish the situation in one case from that presented in another were not completely successful. If the decisions in the *Coombs, Malcomson, Ungrich* and *Brady* cases were to be applied to the instant case, it would seem clearly to follow that the surrogate has power and jurisdiction in this application to compel the trustee to account, to determine preliminarily the right of the petitioner to such relief by passing upon the question whether he is prevented from obtaining such relief by the execution and delivery of the release.

On the other hand, although the *Mondshain* case may be distinguished as involving only a discovery proceeding, that is not true of the *Holzworth* case which involved an accounting.

In view of this apparent conflict in the authorities arising from the application by some of the courts of the principle of construction which limited the broad grant of power in the first and second paragraphs of the Code of Civil Procedure, section 2510, and restricting such grant to the particular cases enumerated in the eight subdivisions thereof, the Legislature amended section 40 of the Surrogate's Court Act, which had superseded section 2510 of the Code of Civil Procedure, by providing, immediately following the first two paragraphs thereof, as follows: " In addition to and without limitation or restriction on the foregoing powers, each surrogate or surrogate's court shall have power, in the cases and in the manner prescribed by statute:" and then followed the eight subdivisions. Obviously this amendment was intended to and did overcome and render ineffective the decisions in the *Mondshain, Holzworth* and *Herman* cases, with the result that since the 1921 amendment the surrogate, without restriction or limitation, is empowered to try and determine all questions, legal or equitable, in any proceeding before him and to determine all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter.

In *Matter of Haigh* (125 Misc. 365), Surrogate FOLEY referred to the 1921 amendment of section 40, saying (pp. 367–368): " Complete jurisdiction 'both legal and equitable is vested under the provisions of section 40 of the Surrogate's Court Act in the surrogate on accounting proceedings. The provisions of that section were further broadened by the amendment made in 1921. That statutory change overcame the effect of such decisions as *Matter of Mondshain* (186 App. Div. 528) and *Matter of Holzworth* (166 id. 150; affd., 215 N. Y. 700), which limited the grant of power contained in the opening paragraph of section 40 to the specific proceedings enumerated thereafter in that section. The cases cited in support of the referee's conclusions that this court lacked jurisdiction have

no application to the question here. They may be grouped into two classes: *First*, those relating to discovery proceedings, such as *Matter of Mondshain (supra)* or *Matter of Heinze* (224 N. Y. 1). In discovery proceedings the jurisdiction of this court has never been as broad as in accountings. *Second*, the class of cases which arose under the obsolete sections of the Code of Civil Procedure. Without exception the more recent cases have sustained the general jurisdiction of this court upon accountings. Thus in *Matter of Coombs* (185 App. Div. 312) it was held that the surrogate had jurisdiction upon the judicial settlement of an estate to hear and determine a rejected claim that the testator at his death had property which he was obligated to transmit by his will to the claimant. In *Matter of Aldrich* (194 App. Div. 815) it was held that the surrogate had jurisdiction under former section 2510 of the Code of Civil Procedure, now section 40 of the Surrogate's Court Act, on an accounting of an executor to determine the title to certain moneys realized from the sale of corporate stock which testator had borrowed from his mother, converted to his own use, and the proceeds of which were returned to his executors. Again in *Matter of Miller* (208 App. Div. 481) the jurisdiction of the surrogate to determine whether certain shares of stock belonged to the executors or to the individual beneficiaries by transfer from the testator in his lifetime appears to have been conceded. Concentration of jurisdiction as to decedents' estates has been the purpose and result of successive legislation and judicial decisions. (See, also, *Matter of Malcomson*, 188 App. Div. 600; *Matter of Van Buren* v. *Estate of Decker*, 204 id. 138; *Matter of Mount Vernon Trust Co.*, 175 id. 353; *Matter of Hoffman*, 108 Misc. 612; *Matter of Brady*, 111 id. 492; *Matter of Watson*, 215 N. Y. 209.) "

In *Matter of Cook* (244 N. Y. 63) the question of the power and jurisdiction of the surrogate after the 1921 amendment came before the Court of Appeals. The probate of a will was there involved and the question presented was whether certain next of kin had the right to contest the probate because of certain letters and papers which they had signed and which the court held in reality amounted to agreements based upon sufficient consideration that they would not contest the will and would make no further claim upon the estate of testatrix. Although the Court of Appeals held that such next of kin were not entitled as a matter of right to a jury trial of the question whether they were entitled to contest the will, it did, nevertheless, hold that they were entitled to a trial of the preliminary issue before the surrogate upon the ground that the agreements in question were cognizable only in equity, and that the surrogate, under section 40 of the Surrogate's Court Act, now has equity

jurisdiction, may hear the parties and take the proof and determine as would a court of equity, whether such next of kin had any standing in his court either legal or equitable.

And again in *Matter of Raymond* v. *Davis* (248 N. Y. 67) there was presented to the Court of Appeals the question of the power and jurisdiction of the surrogate under the Surrogate's Court Act, section 40, as amended in 1921. The decision of the Court of Appeals in that case is the leading authority upon the question and has subsequently been followed and applied in all the courts. The question was presented by the presentation of a claim against the estate by a surviving partner of the decedent asserting his right to share as a creditor in the assets of his deceased partner's estate; and the Court of Appeals held that, as an incident to the allowance or rejection of such claim, the surrogate had power to order by decree a liquidation of the partnership. The court said (pp. 71 and 72): " There remains a question of jurisdiction and procedure. Liquidation may be ordered by a decree of the surrogate as an incident to the allowance or rejection of a claim to share as creditor in the assets of the estate. Only by such relief can there be complete justice between the parties without oppressive expense or harrowing delay. A Surrogate's Court has jurisdiction ' to administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires ' (Surrogate's Court Act, § 40.) Early decisions were made upon the basis of a different grant of power. They deny the competence of a surrogate to decree the winding up of the business of a partnership, though liquidation be a necessary preliminary to the determination of a controversy lawfully before him. (*Thompson* v. *Thompson*, 1 Bradf. 24, 35; *Matter of Irvin*, 87 App. Div. 466, 470.) We must hold them superseded by the provisions of the statute. An amendment in 1921 emphasizes the call for a liberal construction. Till then, the general grant of jurisdiction had at times been read as limited by specific grants of jurisdiction as to enumerated subjects. (*Matter of Mondshain*, 186 App. Div. 528; *Matter of Holzworth*, 166 App. Div. 150; 215 N. Y. 700.) The amendment gives notice that the powers that are specific shall hereafter be read as being ' in addition to and without limitation or restriction on ' the powers that are general. (*Matter of Van Buren* v. *Est. of Decker*, 204 App. Div. 138; *Matter of*

*Haigh*, 125 Misc. Rep. 365, 367, 368; cf. *Matter of Kenny*, 92 Misc. Rep. 330.) ' Concentration of jurisdiction as to decedents' estates ' (per FOLEY, S., in *Matter of Haigh, supra*) is the purpose clearly revealed in the statutory scheme. ' The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy ' (per THOMAS, J., in *Matter of Coombs*, 185 App. Div. 312, 314). To remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked."

It will be noted from the foregoing excerpt from the opinion of the Court of Appeals that the effect of the *Holzworth* and *Mondshain* decisions was destroyed by the 1921 amendment and that the Court of Appeals adopted, with approval, and quoted from the *Haigh* and *Coombs* cases.

The clear effect of that decision was that the surrogate, since 1921, is empowered by the general grant of jurisdiction contained in section 40 of the Surrogate's Court Act, as amended, to try and determine all questions, legal and equitable, arising in any proceeding properly before him and which it is necessary for him to determine, in order to make a full, complete and equitable determination and disposition of the matter; and that in view of the unmistakable language of the statute, the courts will not attempt to discover or fashion reasons to thwart the policy made manifest by the statute and will not remit a party to another forum with the resultant postponement, if not denial, of justice.

Even prior to the decision of the Court of Appeals in *Matter of Raymond* v. *Davis* (*supra*) Surrogate FOLEY had applied the same reasoning and made a similar decision in *Matter of Frame* (128 Misc. 788). There a daughter of the testatrix applied to the surrogate to set aside a formal written agreement which appeared upon its face to adjust all the claims of the parties in a contested probate proceeding raised by objections filed by the petitioner, as well as an adjustment of claims which might arise between the parties in subsequent accounting proceedings. The petitioner also applied to be relieved of a general release executed by her at the same time purporting to release the executors. She also asked that the written withdrawal of her objections and her consent to the probate of the will be held to be of no binding force and effect. The grounds upon which she sought such relief were that the general release, the written agreement of compromise and the withdrawal of the objections were obtained by fraud and misrepresentation

and were without consideration. Surrogate FOLEY said (p. 790):
" A preliminary question as to the jurisdiction of the surrogate
to set aside the compromise agreement and the general release
on the grounds set forth in the petition has been raised by the
respondents. On this issue I hold the Surrogate's Court has ample
statutory jurisdiction to inquire into the validity of the compromise
agreement and if found to have been procured by fraud, to relieve
the petitioner from its terms and effect. It is clear also that juris-
diction likewise exists to set aside as invalid, upon proper proof,
the general release and withdrawal of objections executed by the
petitioner. (*Matter of Malcomson*, 188 App. Div. 600; Surrogate's
Court Act, § 20, subd. 6; Id. § 40, as amd. by Laws of 1924, chap.
100.) Mr. Justice DOWLING in his opinion in the *Malcomson* case
pointed out the plenary powers conferred upon this court by
section 2510 of the Code of Civil Procedure, now section 40 of the
Surrogate's Court Act. He stressed the incongruous and dilatory
procedure which would result if beneficiaries of estates were com-
pelled to resort to the Supreme Court by independent action to
cancel a release or agreement made by them in the settlement of
rights in an estate administered under the supervision of the Surro-
gate's Court and involving a ' question directly affecting the
subject-matter then pending before the surrogate.' "

Since the decision of the Court of Appeals in *Matter of Raymond*
v. *Davis* (*supra*), the Surrogates' Courts have frequently asserted
and exercised their jurisdiction as extended by the 1921 amendment,
and as construed by the Court of Appeals, to try and determine
all questions, both legal and equitable. (*Matter of Lathers*, 137
Misc. 226; *Matter of Moran*, 136 id. 615; *Matter of Belden*, 143 id.
159; *Matter of Hume*, 139 id. 327.) (See, also, *Matter of Seaman*, 205
App. Div. 681.)

In several decisions by Surrogate WINGATE the question has been
thoroughly discussed and the authorities collated. (See particularly
*Matter of Morris*, 134 Misc. 374; *Matter of Reich*, 146 id. 616;
*Matter of Enright*, 149 id. 353.)

In the *Morris Case* (*supra*) the surrogate reviewed the decisions
above referred to as well as others and said (p. 382): " It is believed
that no reasonable construction of this statute could be made
which did not hold that the Surrogates' Courts now possess entirely
unlimited jurisdiction over any and every legal and equitable
question which may ever arise in connection with decedent's estates
and the relations of guardians and wards so far as it concerns
any person actually or constructively before the court by reason
of any right in, claim to, or obligation in connection with a dece-
dent's or ward's estate."

In *Matter of Reich (supra)* the same surrogate said (pp. 616, 617): "The respondent for reasons best known to himself, but which are wholly alien to the law and procedure of this court, has seen fit to attempt the injection into the issues of various procedural and jurisdictional questions which have no merit whatsoever. The cases which he cites in support of his contentions may possess a certain antiquarian interest, but have not represented the law of this State for almost a score of years. The following cases represent the present law: *Matter of Wilson* (252 N. Y. 155); *Matter of Akin* (248 id. 202); *Matter of Raymond* v. *Davis* (Id. 67); *Matter of Cook* (244 id. 63); *Matter of Ashner* (231 App. Div. 127); *MacLean* v. *Hart* (228 id. 379); *Matter of Buckler* (227 id. 146); *Matter of Seaman* (205 id. 681); *Matter of Van Buren* v. *Decker* (204 id. 138); *Matter of Coombs* (185 id. 312); *Matter of Beach* (122 Misc. 261; affd., 208 App. Div. 831); *Matter of Kirkman* (143 Misc. 343); *Matter of Welton* (141 id. 674); *Matter of Pulitzer* (139 id. 575); *Matter of McCarthy* (Id. 147); *Matter of Frame* (128 id. 788); *Matter of Haigh* (125 id. 365); *Matter of Morris* (134 id. 374). In the last cited case this court traced the development of the jurisdiction over decedents' estates in the State of New York from the earliest Dutch settlements to the present time, deducing from the authorities cited (p. 382) that under the law as at present existing, 'the Surrogates' Courts now possess entirely unlimited jurisdiction over any and every legal and equitable question which may ever arise in connection with decedents' estates * * * so far as it concerns any person actually or constructively before the court by reason of any right in, claim to, or obligation in connection with, a decedent's * * * estate.'"

And more recently in *Matter of Enright (supra)* the same surrogate said (p. 355): "Under the portion of section 40 of the Surrogate's Court Act, above quoted, one and only one condition precedent to the jurisdiction of the surrogate is imposed. This is that the question adjudicated shall relate to the affairs of a decedent estate. If compliance with this prerequisite is demonstrated, legislative authority grants the surrogate full power 'to make a full, equitable and complete disposition of the matter by such order or decree as justice requires,' and, to paraphrase the language of the Court of Appeals, does not require the remission of the claimant to another forum with 'a postponement of justice equivalent to a denial.'"

My conclusion from the foregoing history of the statutes and decisions is that since the 1921 amendment the Surrogate's Court has power in a proceeding such as that involved in the instant case to try and determine, as a preliminary issue, the right of the

petitioner to compel an accounting although to enforce that right involves the exercise by this court of equitable jurisdiction to set aside the release. It seems quite clear to me that the effect of such amendment and the decisions following it is that such decisions as the *Mondshain* and *Holzworth Cases* (*supra*) are no longer the law, and that the present law is correctly expressed and applied in such decisions as those in the *Coombs, Malcomson, Fox, Brady* and *Frame Cases* (*supra*). Under those decisions this court would undoubtedly have power and jurisdiction to determine the question now presented.

It seems obvious to me that it should make no difference as to the jurisdiction and power of the court to determine the question whether it is presented and raised by the petition, as in this case, or whether it is presented and raised by answer, as in some of the cases above referred to. In the instant case the petitioner, as a party interested, has *prima facie* the right by petition to this court, to compel the respondent trustee to account. Had he presented his petition without reference to the release the trustee would doubtless have set up the release in his answer as a bar to the proceeding. Surely it cannot be said that by so doing the petitioner was *ipso facto* out of this court and remitted to an action in equity in the Supreme Court to vacate and set aside the release. The situation is not changed by reason of the fact that here the petitioner in his petition, seeking to compel an accounting, sets forth the making of the release and asks this court to determine that it is without effect. It seems to me that this proceeding is a proceeding to compel a testamentary trustee to account, of which proceeding the surrogate expressly and unquestionably has jurisdiction. Having such jurisdiction, the surrogate likewise has power and jurisdiction to determine, preliminarily, whether the petitioner is entitled to compel such an accounting; and in determining that question the surrogate is empowered to try and determine it although it be a matter of equitable rather than of legal cognizance.

I, therefore, determine that the defense set up by the respondent trustee in his answer to the effect that this court is without jurisdiction to try such question is not a good defense and that the issue raised by the petition and answer as to whether the petitioner is entitled to compel an accounting because of the release, may be tried preliminarily before me in order to enable me to determine whether it will be necessary for this court to proceed further in the matter of the compulsory accounting sought.