## HART et al. v. MUTUAL BEN. LIFE INS. CO. OF NEWARK, NEW JERSEY.
### No. 82, Docket 20757.

Circuit Court of Appeals, Second Circuit.

March 10, 1948.

---

Charles P. Connell, of New York City (Lawrence R. Condon, of New York City, on the brief), for plaintiffs-appellants.

A. Amasa Miller, of New York City (Littlefield & Marshall, of New York City, on the brief), for defendant-appellee.

Before AUGUSTUS N. HAND, CLARK, and WOODBURY, Circuit Judges.

CLARK, Circuit Judge.

This is an action to recover legal interest claimed to be due for the delayed payment, January 12, 1943, of two policies on the life of Frank C. Hart, who died on January 14, 1936. Jurisdiction is based on the diverse citizenship of the parties. The complaint is in two causes of action: one for interest on a policy of life insurance of the face amount of $10,000, the other on a like policy of the face amount of $30,000, each issued on the life of Frank C. Hart, husband of plaintiff Marion A. Hart and father of the other three individual plaintiffs, and each naming Marion A. Hart as beneficiary. Except for these differences in amount, the substantive issues affecting the two policies are the same, and the allegations of the two causes are substantially identical. In addition to showing these general facts the complaint goes on to allege that no formal proofs of death were submitted, but that defendant had knowledge of the insured's death because of the wide publicity given to it and because defendant was informed of it by the plaintiff bank and there were various communications between them concerning it, and further that defendant paid the face amount of the policies as thereinafter mentioned. Certain of the issues on this appeal concern these allegations, since they involve the adequacy or waiver of proofs of death; the other issue, presented by the remaining allegations of the complaint, concerns the validity of a state surrogate's decree as to the proceeds of these policies.

These further allegations may be summarized as follows: On December 29, 1936, the plaintiff widow filed a petition in the Surrogate's Court, New York County, for an order from the representatives of her husband's estate for delivery of the policies of insurance. Defendant appeared in the proceedings by its attorneys. Certain controversies and disputes arose whereby an agreement of compromise was entered into by the plaintiffs and others on December 31, 1941, amended by further agreement of December 7, 1942, by the terms of which the proceeds of the policies, "together with all post mortem dividends and interest thereon," were to be paid to the plaintiff bank, as depositary for the benefit of the individual plaintiffs, who "are entitled to receive from the Plaintiff Bank, as depositary, any and all further sums of money due, owing or payable from defendant as claimed and set forth herein." Thereafter in the proceedings before the surrogate, in which defendant had appeared, a decree was made December 30, 1942, approving the agreement of compromise, as amended, and directing the payment of the proceeds, "together with all post mortem dividends and interest thereon," to the plaintiff bank as depositary. Both the relevant parts of the compromise agreement and the entire surrogate's decree are annexed to the complaint as exhibits; and each is "made a part hereof." Then follow allegations of the computation of the amount due upon the policies, which in each case was slightly greater than the face because the insured had overstated his age by two years. "On or about January 12, 1943, pursuant to the said agreement of compromise, as amended," defendant paid the plaintiff bank as depositary this amount as so computed; in addition, defendant paid also the sum of $339.20 on the first policy, and $1,013.50 on the second policy, "which defendant claimed and alleged was interest for one year at 3¼% per annum" on the principal amount of each policy. Plaintiffs claim as due, however, interest from the date of the insured's death on January 14, 1936, until the date of payment, January 12, 1943, at the rate of 6 per cent. Hence the balance sued for is this amount after crediting the defendant with the amount of interest actually paid, a total of $16,111.79 made up of $4,040.11 on the first policy and $12,071.68 on the second. And plaintiffs pray for

judgment for this sum, together with interest from January 12, 1943.

In dismissing the complaint for failure to state a claim for relief on defendant's motion, the district court held that plaintiffs were barred for failure to file proofs of death, as required by the policies, and that there had been no waiver of such proof by the defendant. We think, however, that, in view of the various allegations of knowledge had or notice communicated to the defendant and of possible waiver by the payment, this presents an issue which should not be disposed of against the plaintiffs on the face of the complaint alone. Moreover, the more important and inclusive issue is presented by the court's further holding that the matter was settled by the surrogate's decree, at least to the point that no remedy was available in the federal court. We shall therefore consider that issue, and hence must consider the surrogate's decree in some detail to determine its effect upon the contentions here advanced.

The surrogate's decree itself, signed by the late James A. Foley as surrogate, is a lengthy document, containing long recitals of the past proceedings and numerous orders covering the disposition of these and other policies, eventually directing the executors to wind up the estate and to apply for final settlement of their accounts "in the above mentioned consolidated proceeding" with all convenient speed and fixing the compensation awarded the special guardians appointed in the proceedings. It recites in its title, and elsewhere, that it is an application for the approval of a compromise "Pursuant to Section 19 of the Decedent Estate Law [Consol.Laws, c. 13]," and that it is a decree approving the compromise and "Directing Payment of Personal Property Under Section 206-a of the Surrogate's Court Act." Its preliminary recitals set forth the extensive citations to various parties in interest, the appointment of special guardians for the minors and to represent unborn interests, the appearances for the parties, including all the parties here involved, and introduce its formal orders with the statement, "Now, after taking proof of the facts before the Court and hearing the parties and fully examining into the matter, and on motion of" the attorneys for the petitioners.

Among the various orders, twelve in number, then set forth are those stating that the compromise agreement as amended "is hereby found to be just and reasonable in its effects upon the interests in the said estate or property of" the three infant children and that the original and the amended agreements, "filed pursuant to the provisions of Section 19 of the Decedent Estate Law, be and they hereby are approved." Another order declares void certain residuary trusts under the last will of the deceased "because they do not comply with the terms of the separation agreement made by the said decedent with Marion A. Hart." Another order declares abortive a trust in a life policy not here involved. Another specifically approves the original and amended compromise agreements. Yet another holds that by reason of these declarations of invalidity one of the special guardians appointed to represent unborn issue, and who had filed a report objecting to the compromise for lack of adequate provision for his wards, had no interest and was relieved of the necessity of executing the agreements. There follow three others, the first directing the payment of the proceeds of the specific policies, "together with all post mortem dividends and interest thereon," to the plaintiff bank as depositary under the compromise agreement as amended, "to be disposed of by it as provided in said compromise agreement as amended," the second directing this Company, together with the other companies, "to make payment of the proceeds of the respective policies issued by them described above together with all post mortem dividends and any interest to" the plaintiff bank as depositary, and the third stating that on such payment of the proceeds of the policies, "together with post mortem dividends and any interest," they should be "released, relieved and forever discharged of and from any and all liability, responsibility or accountability to anyone whatsoever with respect to the said policies or the proceeds thereof and post mortem dividends thereon and interest." And after providing for other policies not here in issue, it proceeds to the final orders as to the

executors' accounts and the guardians' fees which are noted above.

The order for the disposition of these particular policies follows the terms of the compromise agreement which was entered into by all the plaintiffs with the executors of the estate and others, but to which the defendant was not a party. The agreement provided for the payment of these and other policies, "together with all interest and post mortem dividends allowed by any of the insurance companies," to the plaintiff bank as depositary, to be by it paid out as therein stated. Then the first direction for payment by the bank is for some 30 per cent of the proceeds to the executors under certain conditions and for the payment of various claims, including tuition charges for the children. The second direction is for payment of a substantially like amount to another party for advances and loans made to the widow for the cost of her own support and maintenance and for the support and education of the children. Finally the bank is directed to pay out the balance in the proportions of 75 per cent to the widow and 25 per cent to the children.

It seems tolerably clear that in this elaborate judicial decree which bears such intrinsic evidence of the care with which the proceedings had been conducted this distinguished surrogate was acting to make a complete and final disposition of a matter over which he thought and held that he had full jurisdiction. Included in this, as we think also clear, was the matter of interest upon the policies in the terms of the agreement, namely, "all interest and post mortem dividends allowed by any of the insurance companies." As a matter of fact, plaintiffs—outside of the widow as named beneficiary—must derive whatever title they have from the proceedings leading up to the decree and the decree itself. Their only allegations in this regard do appear, albeit somewhat blindly, to attribute their interest to the compromise agreement, which of course gets its force from the surrogate's approval. Indeed, their entire statement in this regard appears blind and indefinite. There is no allegation of invalidity of the surrogate's decree or any part of it or, it is fair to say, of any reliance upon it. It is merely stated as one of

the numerous facts, all of which may possibly be incorporated into the penultimate paragraphs alleging that "by reason of the foregoing, there is now due, owing and payable from the defendant to plaintiffs the sum" in question.

Nevertheless their brief and argument on this phase of the appeal is devoted entirely to an attack upon the surrogate's jurisdiction over the subject matter. They assert that, while the surrogate properly awarded the policies to them, yet the matter of interest was simply an issue of contract law, not within the surrogate's jurisdiction. They decline any intent to base any claim upon the decree itself, which, as they assert, is in this regard void and a nullity. Thus they make a sharp differentiation between the interest and the principal of the policies. This appears unduly subtle; it seems only sound upon the theory that all that was sought in the proceedings was physical possession of the policies. How this would justify the claims on behalf of the children and the bank is not too clear. But at any rate, what they actually obtained—obviously at their own behest, since it was their agreement, not defendant's, for which they sought approval—was a direct order that the defendant and the other companies make payment of specific sums to the plaintiff bank, an entire stranger to them. And had the companies not promptly complied with the order, presumably execution would have been taken against them under Surrogate's Court Act, § 83. Thus there seems no escape from the conclusion that plaintiffs are attempting to attack the course of proceedings which gave them the title upon which they base their claim. This they are estopped from doing. Chester v. Buffalo Car Mfg. Co., 183 N.Y. 425, 436, 76 N.E. 480; In re Cronin's Will, 143 Misc. 559, 257 N.Y.S. 496, 512, affirmed 237 App.Div. 856, 261 N.Y.S. 936.

There seems an even more basic ground upon which decision should go against the plaintiffs. For they are attacking collaterally and without adducing any adequate reasons a decree of a court which we must accept as at least presumptively, if not conclusively, immune to such an attack. This, it seems to us, is made clear by the several

pertinent provisions of the state statutes, including N.Y. Decedent Estate Law, § 19, and Surrogate's Court Act, §§ 40, 42, 43, 80, 206-a. These all are important in affording a base for that liberal construction given by the Court of Appeals to carry out the intent of the expansion of jurisdiction of the Surrogate's Court in 1921 designed to center all problems involved in the settlement of estates in that court. Raymond v. Davis' Estate, 248 N.Y. 67, 161 N.E. 421. First we turn to the two statutes under which the consolidated proceedings were directly brought. Surrogate's Court Act, § 206-a, provides for a special proceeding wherein the court is empowered to compel the delivery of specific personal property, or the proceeds or value thereof, by executors to the persons who claim them; it states that, upon the return of the citation to the people interested, "the surrogate must hear the proofs of the parties, determine the issues, adjudicate the respective interests of the parties in such property or the proceeds or value thereof, and make a decree directing delivery or payment as justice requires." N. Y. Decedent Estate Law, § 19, is an extensive provision to the effect that "the surrogate's court having jurisdiction of the estate or property involved" may authorize the compromise of disputes between different claimants to the estate or property in their hands, after appointing guardians of infants or others requiring representation, and make an order after hearing the parties and fully examining into the matter. By amendment in 1946, recommended as a merely clarifying one by the Executive Committee of the Surrogate's Association of the State of New York, it was provided: "The court shall inquire into the circumstances and make such order or decree as justice requires." See "Note of Commission," recited in note to N. Y. Decedent Estate Law, § 19(f) as amended.

Thus these two statutes are themselves of wide scope, calling for the entry of such decrees as justice may require with respect to the parties before the court. Moreover, the present provision as to the general jurisdiction of the Surrogate's Court provides that, in addition to all the powers conveyed upon it by special provisions of the law, it shall have jurisdiction, as follows: "To administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." Surrogate's Court Act, § 40.

Further, § 42 provides that "when the decree or other determination fails to recite the existence or proof of a jurisdictional fact, and such fact actually existed; or when any party has failed to take any intermediate proceeding required by law to be taken, an objection to such decree or determination based thereon is available only upon appeal." And § 43 states that where the jurisdiction of the Surrogate's Court is drawn in question collaterally, "the jurisdiction is presumptively, and, in the absence of fraud or collusion, conclusively, established, by an allegation of the jurisdictional facts, contained in a written petition or answer, duly verified, used in the Surrogate's Court. The fact that jurisdiction of the parties was obtained is presumptively proved, by a recital to that effect in the decree." Finally, § 80 provides: "Every decree of a surrogate's court is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained. To such decree there is attached all the presumptions pertaining to a judgment rendered by a court of general jurisdiction in a common law action."

As a matter of fact, New York has long been one of the states applying the rule that the surrogate's own finding of the facts upon which his jurisdiction depends cannot be collaterally attacked, except for fraud. Sheldon v. Wright, 5 N.Y. 497; Plant v. Harrison, 36 Misc. 649, 74 N.Y.S. 411, 437; cf. Lapiedra v. American Surety Co., 247 N.Y. 25, 159 N.E. 710. Perhaps, without more, we are not justified in holding that the several references to the com-

promise agreement as filed and approved under the statutory provision are such findings. Indeed plaintiffs urge that, without the petitions before the surrogate, we cannot interpret his decree, and that we should accept every intendment in favor of the complaint as against this motion to dismiss. But this generally salutary rule would seem not in point where plaintiffs' careful selection of data from the records of a state court for whose decrees we must have respect suppresses some of the important facts. The statutes we think require that a presumption of regularity should obtain until it is negatived by a clear showing of adequate grounds for the collateral attack. This is supported by the wide sweep of the decree itself in its adjudications of interests in the executors and others. Further, it is in keeping with the liberal construction of the statutory intent by the state courts. Raymond v. Davis' Estate, supra; In re Feinberg, 277 N.Y. 698, 14 N.E.2d 631; In re Schopperle's Estate, 189 Misc. 111, 69 N.Y.S.2d 576; In re Wentworth's Will, 188 Misc. 174, 67 N.Y.S.2d 584, affirmed 272 App.Div. 974, 71 N.Y.S.2d 542; In re Wendland's Estate, Sur., 35 N.Y.S.2d 622; In re O'Flyn's Will, 174 Misc. 1025, 22 N.Y.S.2d 423; In re Winslow's Estate, 151 Misc. 298, 272 N.Y.S. 829; In re Enright's Estate, 149 Misc. 353, 267 N.Y.S. 483; In re Dickman's Estate, 142 Misc. 207, 254 N.Y.S. 302.

Plaintiffs cite and rely upon cases dealing with the statutes before their extension in 1921 and upon other cases of direct declination—not by way of collateral attack—of jurisdiction by the surrogate of matters not properly involved in settlement of a decedent's estate. Among these are two cases by the learned surrogate who entered this decree, showing, we believe, more the care with which he viewed the issue of jurisdiction than a possible error by him in this instance. In In re Kalik's Estate, 178 Misc. 607, 35 N.Y.S.2d 16, he declined to settle partnership affairs against an objecting partner, and in In re Krasnofsky's Estate, 157 Misc. 759, 284 N.Y.S. 738, he declined to order payment of insurance where the estate had no interest in the policies or the proceeds. Plaintiffs also go outside the record to assert that here the executors had no actual interest in the policies, since the children's interest came from some trust arising by agreement between the parents and the payments to the executors were designed to supply ready cash to avoid forced conversion of other assets of the estate. Had such facts been properly before us, we would still have thought them inadequate to explain the comprehensiveness of the decree and insufficient to destroy the presumption of its validity.

Plaintiffs' disclaimer of any reliance upon the decree makes it unnecessary for us to attempt its interpretation beyond what we have said. The district court did feel compelled to touch upon the matter. Having in mind the provisions of the decree touching the interest—which, in turn, went back to the agreement directly referring to the interest and dividends "allowed by any of the insurance companies"—the court held no interest due. But it said that if the provision meant anything more than a direction to defendant to pay the proceeds, "with interest, if any," it was for the Surrogate's Court to say so. And defendant has pointed out that it was not in default, the delay being due to the disputes among the beneficiaries. We agree with the district court that if any dispute as to the meaning of the decree should arise hereafter, clarification should come from the court which rendered the decree, rather than from us. There is no equity in plaintiffs' appeal to the federal courts; having obtained certain benefits from the surrogate's action on their petitions, they appear now to be shopping for another forum to obtain something more, contrary to the state's desire to concentrate the settlement of estates in the Surrogate's Court. Raymond v. Davis' Estate, supra.

Judgment affirmed.