In the Matter of the Estate of SAUL GUREVITCH, Deceased.

Surrogate's Court, New York County, January 28, 1938.

*Benjamin Levine*, for Bertha Riskin, as surviving executrix and legatee, and for Bessie Goodrich, legatee.

*Irving M. Maron*, for the Kashdin Co., Inc.

*Abel Elk*, former attorney for Kashdin Co., Inc.

DELEHANTY, S. By order to show cause dated November 30, 1937, the executrix of this estate moved to punish Kashdin Co., Inc., for disobedience of an order heretofore entered on June 7, 1937. By order to show cause dated December 1, 1937, Kashdin Co., Inc., by its president, Jacob H. Kashdin, moved to vacate the order of June 7, 1937. The motion to vacate is based upon lack of jurisdiction of the court to make the original order. Since a review of this court's determination on that motion to vacate is to be had it is appropriate that there should be first a decision on the motion to vacate and that determination of the punishment, if any, for failure to obey the order should be withheld. If the attack upon the order shall fail then this court will take proof of the damage to the estate by reason of the defiance of its order and will determine also what, if any, punitive fine will be imposed. (*Geller* v. *Flamount Realty Corp.*, 260 N. Y. 346; *Matter of Consumer's Poultry Dealers Corp.* v. *Podberesky Bros., Inc.*, 244 App. Div. 754; *Ross* v. *Thousand Island Park Assn.*, 203 id. 499; *Stewart* v. *Smith*, 186 id. 755; *Socialist Co-op. Pub. Assn.* v. *Kuhn*, 164 N. Y. 473.)

The order of June 7, 1937, was made in the course of an accounting proceeding. The account then under consideration was one which set up as assets of the estate undivided interests in two parcels of property located in Mount Vernon, N. Y. The accounting period ran from January 1, 1933, to December 31, 1936. In Schedule A of the account the real estate referred to is listed. In respect of each parcel there is stated, " Co-owner Jacob Kashdin, 100 West 44th Street, Borough of Manhattan, City of New York." Under a schedule headed " Statement of all and net income received," there is listed the income from these two parcels with the notation, " Estate's share (one-half net income) $3,851.70," to which is appended a statement that the figures had been supplied by Jacob H. Kashdin, co-owner. In the schedule dealing with decreases of assets the foreclosure of one of the parcels is reported. In the schedule setting out administration expenses there are listed a payment for the appraisal of this real estate and payment of a special guardian's fee with the notation, " Advanced by Jacob Kashdin." In the schedule headed, " Statement of claims of creditors," there is listed a claim of Jacob H. Kashdin alleged to be " Balance due on account of net rent income " from the two parcels referred to. There is listed also in favor of Mr. Kashdin another claim referred to as " Rent securities collected and received by decedent before death." There is listed another claim of his which is stated to be " Advance of first half 1933 taxes on Mt. Vernon properties." In a schedule headed " Statement of creditors' claims allowed, paid and paid on account," there are listed payments aggregating $3,851.69 made up

of separate items for the years 1933, 1934, 1935 and 1936. This schedule shows total claims of $4,339.06 in favor of Jacob H. Kashdin and a payment of the amount previously stated, leaving a balance alleged to be due him of $487.37. In the schedule listing property still on hand, the remaining parcel not foreclosed is described with Jacob Kashdin listed as co-owner.

In the affidavit on which the order to show cause was granted, Jacob Kashdin stated that at the time of the pendency of the proceeding which resulted in the order of June 7, 1937, the attorney for Kashdin Co., Inc., was Abel Elk, Esq. He asserted in that affidavit that the consent executed by Mr. Elk was contrary to an express direction to Mr. Elk to oppose the motion. He asserted, too, that he had no knowledge of Mr. Elk's intention to consent to the order. In due course Mr. Elk made an affidavit setting forth a fact recital *which is conceded to be true* for the purpose of a determination of this application. The facts so established are that the corporation through its president, Mr. Kashdin, was fully aware of the proceedings which resulted in the June 7, 1937, order and that the corporation determined that " the most expedient thing to do " would be to open the joint bank account " provided   *   *   *   that the proceeds *   *   *   remain intact and be available for the payment of interest charges, taxes, repairs, etc." The conceded fact is that Mr. Kashdin was present while the attorney for the corporation agreed by telephone with the moving party upon the terms of the  order. The corporation was then co-owner of the property. Mr. Kashdin was advised on June 12, 1937, that the order had been made and that it conformed to the arrangements to which Mr. Kashdin had listened. Mr. Kashdin thereupon advised Mr. Elk that the corporation would open the bank account within the next few weeks. Mr. Kashdin received from Mr. Elk, as attorney for the corporation, a letter in which he was advised that an appropriate notice to the tenants was in process of preparation. Thereafter he repeatedly told Mr. Elk that he would take steps to open the joint bank account. He never did so.

The proof otherwise establishes that between the opening date of the accounting period and the date of the order of June 7, 1937, Mr. Kashdin, who theretofore had as an individual been the owner of the undivided half interest in the property in Mount Vernon, transferred the legal title thereof to a corporation, Kashdin Co., Inc. He continued thereafter as president of the corporation to control and manage the property. He was the chief if not the only stockholder of the corporation. The items in the account dealing with the rents covered a substantial period during which the corporation was the co-owner of record.

The position now taken by Mr. Kashdin in behalf of the corporation is stated thus in his affidavit sworn to on November 30, 1937, and attached to the order to show cause in this proceeding:

" 2. The Surrogate's Court is a statutory court of limited jurisdiction and its powers are limited and defined by statute. A court has no powers other than those enumerated in the statute. There is no provision in the statute which gives the Surrogate's Court the right to require tenants in common, even though one of the tenants in common is an estate, the administration of which is pending before the court, to open a joint bank account for the deposit of rents derived from the property owned in common. Certainly, the Surrogate's Court could not summarily order such action.

" 3. The Surrogate's Court, having no jurisdiction in the matter, the consent, even were it properly given, could not confer jurisdiction.

" 4. As a tenant in common, Kashdin Co., Inc., had and has the right to collect the rents derived from the property. If a co-tenant does not receive its share of the net avails of the rents, its remedy is an action for an accounting which must be brought in a court of general jurisdiction, namely, the Supreme Court."

The memorandum submitted in behalf of Kashdin Co., Inc., follows the argument made in the quoted excerpts from the affidavit. The question presented is one of power.

It must of course be conceded that the Surrogate's Court is in general a court of limited jurisdiction. The moving party, however, overlooks the fact that jurisdiction of the Surrogate's Court in an *accounting* proceeding *is without limitation*. In such a proceeding it has power to take any action necessary to the ascertainment of the assets of the estate of the deceased and to the enforcement of the rights of the estate even though the taking and stating of an account with a third party is required for the purpose. (*Matter of Raymond* v. *Davis*, 248 N. Y. 67, 71, 72.) In that case CARDOZO, Ch. J., swept away all the arguments of the moving party and left nothing to be said on the subject by this court. Perhaps it should be noted that in the cited case the copartnerhip interest of the deceased there accounted for included real property in respect of which there was involved the question whether or not the individual in whose name it stood had the right to incumber it with a mortgage and whether or not he owned it. The determination of such questions plainly invoked as broad an equitable jurisdiction as is involved in the order here attacked. Plainly this court had power to make an interim order designed to preserve and protect the property interests of deceased, to determine as between the co-owners who owed the other and to make available the data necessary to a determination of deceased's interests, if any, in the rents so that the validity

of the asserted claims could be tested. The co-owner had come into the proceeding through its attorney. The order was appropriate to an accounting between the estate and the co-owner. The corporation co-owner expressly assented to the order and is bound by it. Accordingly the motion to vacate the order of June 7, 1937, is denied.

The companion motion to punish for contempt is placed upon the reserved generally calendar of the court to await the determination on appeal which counsel for the moving party in this proceeding states he desires to take. If the appeal is not prosecuted with reasonable speed the contempt application must be restored to the calendar pursuant to the rules of the court.

Submit, on notice, order denying the motion to vacate the order of June 7, 1937.